1  JONATHAN H. BLAVIN (State Bar No. 230269)
   jonathan.blavin@mto.com
2  ELLEN M. RICHMOND (State Bar No. 277266)
   ellen.richmond@mto.com
3  JOSHUA PATASHNIK (State Bar No. 295120)
   josh.patashnik@mto.com
4  MUNGER, TOLLES & OLSON LLP
   560 Mission Street, Twenty-Seventh Floor
5  San Francisco, CA 94105-4000
   Telephone:  (415) 512-4000
6  Facsimile:   (415) 512-4077

7  JOHN W. SPIEGEL (State Bar No. 78935)
   john.spiegel@mto.com
8  MUNGER, TOLLES & OLSON LLP
   355 South Grand Avenue, Thirty-Fifth Floor
9  Los Angeles, California 90071-1560
   Telephone:  (213) 683-9100
10 Facsimile:   (213) 687-3702

11 Attorneys for Plaintiff Airbnb, Inc.

12 *[Additional counsel listed on next page]*

13

14            UNITED STATES DISTRICT COURT

15            CENTRAL DISTRICT OF CALIFORNIA

16                 WESTERN DIVISION

17

| 18 | AIRBNB, INC. and HOMEAWAY.COM, INC., | Case Nos. 2:16-cv-6645, 2:16-cv-6641 |
|---|---|---|
| 19 | | **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR** |
| 20 | Plaintiffs, | **PRELIMINARY INJUNCTION;** |
| | | **MEMORANDUM OF POINTS AND** |
| 21 | vs. | **AUTHORITIES IN SUPPORT** |
| | | **THEREOF** |
| 22 | CITY OF SANTA MONICA, | |
| | Defendant. | Hearing Date:     Oct. 28, 2016 |
| 23 | | |

24

25

26

27

28

*Additional counsel*:

JAMES C. GRANT (*pro hac vice* application pending)
  jamesgrant@dwt.com
AMBIKA K. DORAN (*pro hac vice* application pending)
  ambikadoran@dwt.com
ERIC M. STAHL (State Bar No. 292637)
  ericstahl@dwt.com
DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, Washington  98101
Telephone:  (206) 757-8136
Facsimile:  (206) 757-7136

JASON HARROW (CA State Bar No. 308560)
DAVIS WRIGHT TREMAINE LLP
865 S Figueroa Street, Suite 2400
Los Angeles, California 90017
Telephone: (213) 633-6800
Facsimile: (213) 633-6899
Email: jasonharrow@dwt.com

Attorneys for Plaintiff HomeAway.com, Inc.

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION**

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on October 28, 2016, at 9:00 a.m. or as soon thereafter as it may be heard, in the above-entitled court, located at 312 N. Spring Street, Los Angeles, CA 90012, Plaintiffs Airbnb, Inc. ("Airbnb") and HomeAway.com, Inc. ("HomeAway") will and hereby do move this Court for entry of a preliminary injunction prohibiting enforcement of Sections 6.20.030, 6.20.050(b), and 6.20.100 of the 2015 Short-Term Rental Ordinance ("Ordinance") enacted by the Santa Monica City Council.

As set forth in the accompanying Memorandum of Points and Authorities, good cause exists for the relief requested.  These sections of the Ordinance violate Plaintiffs' rights under the Communications Decency Act, as well as the First, Fourth, and Fourteenth Amendments and the Stored Communications Act. Plaintiffs and the public will suffer irreparable harm absent an injunction; the balance of the equities tips in Plaintiffs' favor; and an injunction is in the public interest.

This Motion is based upon this Notice of Motion; the supporting Memorandum of Points and Authorities; the supporting declarations of David Owen, Bill Furlong, and Jonathan H. Blavin filed herewith; all documents and pleadings on file in this action; and such other argument or evidence as may be presented in reply or at the hearing on this motion.

1    DATED:  September 2, 2016      MUNGER, TOLLES & OLSON LLP

2

3

4                                   By:  */s/ Jonathan H. Blavin*

                                       JONATHAN H. BLAVIN

5                                 Attorneys for Plaintiff Airbnb, Inc.

6

7                                 DAVIS WRIGHT TREMAINE LLP

8

9                                 By:  */s/ Eric M. Stahl*

10                                  ERIC M. STAHL

                                  Attorneys for Plaintiff HomeAway.com, Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ...................................................................................................1

II.    BACKGROUND ...................................................................................................3

       A.     Airbnb and HomeAway ..........................................................................3

       B.     Santa Monica's Regulation of Short-Term Rentals.................................5

       C.     Santa Monica's Enforcement Efforts Under the Ordinance .....................7

III.   ARGUMENT .........................................................................................................8

       A.     Standard for Preliminary Injunction .......................................................8

       B.     Plaintiffs are Likely To Succeed on the Merits of Their Claims.............8

              1.     Section 230 of the CDA Preempts the Ordinance .........................8

              (a)    Section 230 Forecloses Attempts to Hold a Website Liable
                     for Allegedly Unlawful Content of its Users...............................8

              (b)    The Ordinance Impermissibly Attempts to Hold Plaintiffs
                     Liable for Content Provided By Users .......................................11

              2.     The Ordinance Violates the First Amendment Because It Is
                     a Content-Based Restriction on Speech that Is Not Narrowly
                     Tailored to Serve a Substantial Government Interest...................15

              3.     The Ordinance Violates the First Amendment and Due
                     Process Clause Because It Imposes Criminal Penalties on
                     Speech Without Any Proof of Scienter .......................................19

              4.     The SCA Preempts the Ordinance's Disclosure Provisions..........20

              5.     Plaintiffs Are Likely to Succeed on Their Fourth
                     Amendment Claim Because the Ordinance Requires Them
                     to Turn Over Business Records Without Prior Judicial
                     Authorization .............................................................................21

       C.     Plaintiffs Face Irreparable Harm Unless the Ordinance is Enjoined.......22

       D.     The Balance of Equities and Public Interest Favor Plaintiffs.................24

IV.    CONCLUSION ...................................................................................................25

MOTION FOR PRELIMINARY INJUNCTION

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Aeroground, Inc. v. City & County of San Francisco*,
 170 F. Supp. 2d 950 (N.D. Cal. 2001).....................................................24

*Almeida v. Amazon.com, Inc.*,
 456 F.3d 1316 (11th Cir. 2006) ......................................................10, 13

*Am. Trucking Assocs. v. City of Los Angeles*,
 559 F.3d 1046 (9th Cir. 2009) ......................................................24, 25

*Backpage.com, LLC v. Cooper*,
 939 F. Supp. 2d 805 (M.D. Tenn. 2013) ........................... 12, 13, 17, 24

*Backpage.com, LLC v. Hoffman*,
 2013 WL 4502097 (D.N.J. Aug. 30, 2013) ......................................12, 23

*Backpage.com, LLC v. McKenna*,
 881 F. Supp. 2d 1262 (W.D. Wash. 2012) ...............................12, 13, 17

*Bank One, Utah v. Guttau*,
 190 F.3d 844 (8th Cir. 1999) ..................................................................25

*Barnes v. Yahoo!, Inc.*,
 570 F.3d 1096 (9th Cir. 2009) ...............................................11, 12, 13

*Bartnicki v. Vopper*,
 532 U.S. 514 (2001) ...........................................................................2, 17

*Batzel v. Smith*,
 333 F.3d 1018 (9th Cir. 2003) ...........................................................9, 23

*Ben Ezra, Weinstein, & Co. v. Am. Online Inc.*,
 206 F.3d 980 (10th Cir. 2000) ................................................................10

*Braun v. Soldier of Fortune Magazine, Inc.*,
 968 F.2d 1110 (11th Cir. 1992) ..............................................................18

*Carafano v. Metrosplash.com, Inc.*,
 339 F.3d 1119 (9th Cir. 2003) .......................................................1, 9, 12

MOTION FOR PRELIMINARY INJUNCTION

# TABLE OF AUTHORITIES
### (continued)

Page

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*,
447 U.S. 557 (1980) ...................................................................................16

*Chi. Lawyers' Comm. for Civil Rights Under Law, Inc. v. Craigslist, Inc.*,
519 F.3d 666 (7th Cir. 2008) ......................................................................10

*City of Los Angeles v. Patel*,
135 S. Ct. 2443 (2015)....................................................................2, 21, 22

*Crispin v. Christian Audigier, Inc.*,
717 F. Supp. 2d 965 (C.D. Cal. 2010)........................................................20

*Doe v. Friendfinder Network, Inc.*,
540 F. Supp. 2d 288 (D.N.H. 2008) ...........................................................14

*Doe v. MySpace, Inc.*,
474 F. Supp. 2d 843 (W.D. Tex. 2007), *aff'd*, 528 F.3d 413 (5th Cir.
2008) ...........................................................................................................14

*Doe v. MySpace, Inc.*,
528 F.3d 413 (5th Cir. 2008) ......................................................................10

*Elrod v. Burns*,
427 U.S. 347 (1976) .............................................................................2, 22

*Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*,
521 F.3d 1157 (9th Cir. 2008) (en banc)......................................9, 11, 13

*Farris v. Seabrook*,
677 F.3d 858 (9th Cir. 2012) ..................................................................8, 22

*Fields v. Twitter, Inc.*,
2016 WL 4205687 (N.D. Cal. Aug. 10, 2016) ..........................................15

*Florida Bar v. Went For It, Inc.*,
515 U.S. 618 (1995) ...................................................................................16

*Foti v. City of Menlo Park*,
146 F.3d 629 (9th Cir. 1998) ........................................................................1

*Free Speech Coal., Inc. v. Attorney General*,
825 F.3d 149 (3d Cir. 2016) .......................................................................22

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Gavra v. Google Inc.*,
   2013 WL 3788241 (N.D. Cal. July 17, 2013) ........................................13

*Gibson v. Craigslist, Inc.*,
   2009 WL 1704355 (S.D.N.Y. June 15, 2009) ........................................13

*Green v. Am. Online*,
   318 F.3d 465 (3d Cir. 2003) ........................................10

*Hustler Magazine, Inc. v. Falwell*,
   485 U.S. 46 (1988) ........................................19

*Inman v. Technicolor USA, Inc.*,
   2011 WL 5829024 (W.D. Pa. Nov. 18, 2011) ........................................10

*Jane Doe No. 1 v. Backpage.com, LLC*,
   817 F.3d 12 (1st Cir. 2016) ........................................ 10, 11, 14, 15

*Johnson v. Arden*,
   614 F.3d 785 (8th Cir. 2010) ........................................10

*Jones v. Dirty World Entm't Recordings LLC*,
   755 F.3d 398 (6th Cir. 2014) ........................................10

*Klein v. City of San Clemente*,
   584 F.3d 1196 (9th Cir. 2009) ........................................24

*Mahroom v. Best W. Int'l, Inc.*,
   2009 WL 248262 (N.D. Cal. Feb. 2, 2009) ........................................24

*Mazur v. eBay Inc.*,
   2008 WL 618988 (N.D. Cal. Mar. 4, 2008) ........................................10, 13

*Melendres v. Arpaio*,
   695 F.3d 990 (9th Cir. 2012) ........................................25

*Morales v. Trans World Airlines, Inc.*,
   504 U.S. 374 (1992) ........................................23

*N. Y. State Bar Ass'n v. Reno*,
   999 F. Supp. 710 (N.D.N.Y. 1998) ........................................23

# TABLE OF AUTHORITIES
### (continued)

Page

*New York v. Ferber*,
458 U.S. 747 (1982) ..........................................................................19

*News & Sun Sentinel Co. v. Bd. of Cnty. Comm'rs*,
693 F. Supp. 1066 (S.D. Fla. 1987)....................................................18

*Quon v. Arch Wireless Operating Co.*,
529 F.3d 892 (9th Cir. 2008), *rev'd on other grounds*, *City of Ontario
v. Quon*, 560 U.S. 746 (2010)............................................................20

*Reed v. Town of Gilbert*,
135 S. Ct. 2218 (2015)........................................................................16

*Ricci v. Teamsters Union Local 456*,
781 F.3d 25 (2d Cir. 2015) .................................................................10

*Satellite Television of N.Y. Assocs. v. Finneran*,
579 F. Supp. 1546 (S.D.N.Y. 1984) ...................................................23

*Smith v. California*,
361 U.S. 147 (1960) ...........................................................................19

*Sorrell v. IMS Health Inc.*,
564 U.S. 552 (2011) ...........................................................................16

*Telecomms. Regulatory Bd. v. CTIA-Wireless Ass'n*,
752 F.3d 60 (1st Cir. 2014) ................................................................21

*Thalheimer v. City of San Diego*,
645 F.3d 1109 (9th Cir. 2011) ..............................................................8

*Thompson v. W. States Med. Ctr.*,
535 U.S. 357 (2002) ...........................................................................18

*Toomer v. Witsell*,
334 U.S. 385 (1948) ...........................................................................23

*United States v. X-Citement Video, Inc.*,
513 U.S. 64 (1994) .............................................................................19

*Universal Commc'n Sys., Inc. v. Lycos, Inc.*,
478 F.3d 413 (1st Cir. 2007) ...........................................................9, 10

-v-

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Valle Del Sol Inc. v. Whiting,*
709 F.3d 808 (9th Cir. 2013) ...................................................17

*Valle del Sol Inc. v. Whiting,*
732 F.3d 1006 (9th Cir. 2013) .................................................23

*Village of Schaumburg v. Citizens for a Better Env't,*
444 U.S. 620 (1980) ...............................................................17

*Yniguez v. Arizonans for Official English,*
42 F.3d 1217 (9th Cir. 1994) .................................................18

*Zauderer v. Office of Disciplinary Counsel,*
471 U.S. 626 (1985) ...............................................................18

*Zeran v. Am. Online, Inc.,*
129 F.3d 327 (4th Cir. 1997) .................................9, 10, 13, 14

**STATE CASES**

*Gentry v. eBay, Inc.,*
99 Cal. App. 4th 816 (2002) ...................................................10

*Hill v. StubHub, Inc.,*
219 N.C. App. 227 (2012) .................................................10, 14

**FEDERAL STATUTES AND LEGISLATIVE MATERIALS**

18 U.S.C. § 2510.......................................................................20

18 U.S.C. § 2701.........................................................................2

18 U.S.C. § 2702.......................................................................20

18 U.S.C. § 2703..................................................................20, 21

18 U.S.C. § 2711.......................................................................20

47 U.S.C. § 230 ................................................................. passim

141 Cong. Rec. H8469–72.........................................................23

1

**TABLE OF AUTHORITIES**
**(continued)**

2

Page

3  **MUNICIPAL ORDINANCES AND CODE PROVISIONS**

4  Anaheim Mun. Code § 4.05.120.030.................................................................10

5  Anaheim Mun. Code § 4.05.130.0103...............................................................10

6
7  Santa Monica Mun. Code § 6.20.010 ..........................................................5, 6, 11

8  Santa Monica Mun. Code § 6.20.020. ........................................................ passim

9  Santa Monica Mun. Code § 6.20.030. ........................................................ passim

10  Santa Monica Mun. Code § 6.20.050 .......................................................... passim

11  Santa Monica Mun. Code § 6.20.100 ...........................................................7, 17

12  Santa Monica Mun. Code § 8.12.060 ..........................................................14, 19

13  Santa Monica Mun. Code § 8.44.100 ..........................................................14, 19

14  Santa Monica Ordinance No. 2484CC .......................................................... passim

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR PRELIMINARY INJUNCTION

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    INTRODUCTION

3

Plaintiffs Airbnb, Inc. ("Airbnb") and HomeAway.com, Inc. ("HomeAway")

4 respectfully request a preliminary injunction enjoining Defendant City of Santa

5 Monica ("City") from enforcing Ordinance No. 2484CC (the "Ordinance").  The

6 Ordinance, which took effect June 12, 2015 and pursuant to which the City issued

7 regulations effective July 1, 2016, bans the short-term rental of properties when a

8 resident is not present, regulates the short-term rental of portions of homes when a

9 resident is present, and imposes onerous obligations on websites that publish third-

10 party listings for such rentals, in an apparent attempt to require them to help enforce

11 the short-term rental restrictions themselves.  This is impermissible.[1]

12

First, the Ordinance violates Section 230 of the Communications Decency Act,

13 47 U.S.C. § 230 ("CDA"), which prohibits "treat[ing]" websites, including hosting

14 platforms like Plaintiffs, "as the publisher or speaker of any information provided by

15 another information content provider."  47 U.S.C. §§ 230(c)(1).  Courts have broadly

16 construed Section 230 to bar the imposition of liability on websites premised on

17 content provided by third parties.  The Ordinance violates this proscription by

18 penalizing websites if they publish or fail to remove third-party listings for short-term

19 rentals that violate *any* Santa Monica laws, including the Ordinance.  §§ 6.20.020,

20 6.30.030.[2]  Congress designed Section 230 to remove the "obvious chilling effect"

21 caused by "the specter of tort liability" for every message a website republishes.

22 *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1124 (9th Cir. 2003).  The

23 Ordinance violates Section 230 and will have precisely such an effect.

24 _____

25 [1] This action is both an as-applied and a facial challenge.  It is as-applied in that it
seeks only to prohibit the City from enforcing the Ordinance against Plaintiffs; and it

26 is a facial challenge in that the Ordinance, on its face, is invalid in certain respects.
*See Foti v. City of Menlo Park*, 146 F.3d 629, 635 (9th Cir. 1998).

27 [2] Unless otherwise noted, all references in this format are to the sections of the

28 municipal code enacted by the Ordinance, which is attached hereto as Appendix A.

1    Second, the Ordinance violates the First Amendment.  The prohibition on the

2  publication of certain listings for short-term rentals is a content-based speech

3  restriction that is presumptively unconstitutional.  The City cannot overcome this

4  presumption because it cannot show that the restriction directly advances a

5  substantial state interest in a narrowly tailored way.  The "normal method of deterring

6  unlawful conduct" is to punish the conduct, not prohibit speech about it.  *Bartnicki v.*

7  *Vopper*, 532 U.S. 514, 529 (2001).  The City cannot show the obvious alternative of

8  enforcing its laws against residents who rent properties in violation of the law would

9  be ineffective or inadequate.  Just the opposite:  The City *can* enforce (and has

10  enforced) its laws directly against hosts who violate them.

11    Third, the Ordinance violates the First Amendment and the Due Process

12  Clause of the Fourteenth Amendment because it seeks to impose criminal penalties

13  on hosting platforms for publishing third-party listings without any requirement to

14  show that a platform *knows* a listing is unlawful.  The Supreme Court has rejected

15  states' efforts to impose strict criminal liability against publishers of speech.

16    Finally, the Stored Communications Act, 18 U.S.C. § 2701 *et seq.* ("SCA")

17  and Fourth Amendment bar the provisions of the Ordinance requiring Plaintiffs to

18  disclose user information to the City.  The Ordinance requires hosting platforms to

19  disclose customer information—without a subpoena or other legal process.

20  § 6.20.050(b).  This requirement squarely conflicts with the SCA, which preempts

21  state laws that compel services like Plaintiffs to release customer information to the

22  government without the required process.  The Ordinance also violates the Fourth

23  Amendment because, contrary to the Supreme Court's decision in *City of Los*

24  *Angeles v. Patel*, 135 S. Ct. 2443 (2015), it threatens Plaintiffs with criminal

25  sanctions if they fail to provide customer data without an opportunity to challenge the

26  demand before a neutral decision maker.

27    Absent this Court's intervention, the Ordinance will cause Plaintiffs irreparable

28  harm.  "The loss of First Amendment freedoms, for even minimal periods of time,

unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976).  So, too, courts have found irreparable harm where, as here, a plaintiff faces a threat of prosecution and severe penalties under a preempted state law, and where a law could substantially disrupt the plaintiff's business and erode customer goodwill.

Given this palpable threat of irreparable harm, the equities tip sharply in Plaintiffs' favor.  Moreover, the public interest is served by enforcing the Constitution and preemptive federal law.  At the same time, an injunction would not prevent the City from continuing to enforce its laws against residents who violate them.  The Court should enjoin enforcement of the Ordinance against Plaintiffs.

## II.    BACKGROUND

### A.    Airbnb and HomeAway

Airbnb and HomeAway provide Internet platforms through which individuals desiring to book accommodations ("guests") and persons listing accommodations available for rental ("hosts") can find each other and enter into agreements to reserve and book travel accommodations.  Declaration of David Owen ("Owen Decl."), ¶ 2; Declaration of Bill Furlong ("Furlong Decl.") ¶ 2.[3]

Neither HomeAway nor Airbnb manages, operates, leases or owns the accommodations, and neither is a party to the agreements between guests and hosts for the booking of rentals.  Owen Decl. ¶ 4; Furlong Decl. ¶ 3.  Plaintiffs' platforms provide means by which hosts can list their accommodations and guests can locate and connect with hosts.  Owen Decl. ¶ 3; Furlong Decl. ¶ 2.  Hosts, not Plaintiffs, provide the content for listings, such as descriptions and price of rentals, and the dates and lengths of stay they are available.  Owen Decl. ¶¶ 6-7; Furlong Decl. ¶ 6.  Plaintiffs require hosts to agree they are solely responsible for the content of their listings.  *See* Owen Decl. ¶ 5 & Ex. A at 16 (hosts "alone are responsible for any and

---

[3] HomeAway operates three websites for short-term rentals in the United States – HomeAway.com, VRBO.com, and VacationRentals.com.  *See* Furlong Decl. ¶ 2.  As used herein, "HomeAway" refers to all three of these websites.

1   all Listings and Member Content [they] post."); Furlong Decl. ¶ 6 & Ex. B at 26

2   ("All property listings on the Site are the sole responsibility of the" owner).  Plaintiffs

3   do not review the listings before they appear on their websites.  Owen Decl. ¶ 7;

4   Furlong Decl. ¶ 6.

5       Plaintiffs require hosts (and guests) to comply with local laws in listing and

6   renting units.  The Airbnb Terms of Service state that "HOSTS SHOULD

7   UNDERSTAND HOW THE LAWS WORK IN THEIR RESPECTIVE CITIES.

8   SOME CITIES HAVE LAWS THAT RESTRICT THEIR ABILITY TO HOST

9   PAYING GUESTS FOR SHORT PERIODS….  IN MANY CITIES, HOSTS MUST

10  REGISTER, GET A PERMIT, OR OBTAIN A LICENSE BEFORE LISTING A

11  PROPERTY OR ACCEPTING GUESTS.  CERTAIN TYPES OF SHORT-TERM

12  BOOKINGS MAY BE PROHIBITED ALTOGETHER."  Owen Decl. Ex. A at 11.

13  HomeAway's Terms and Conditions state that hosts "are responsible for and agree to

14  abide by all laws, rules, ordinances, or regulations applicable to the listing of their

15  rental property …, including but not limited to laws … [and] requirements relating to

16  taxes…."  Furlong Decl. Ex. B at 22.  In addition, Plaintiffs encourage hosts to keep

17  apprised of the laws in their jurisdictions and provide on their websites information

18  about Santa Monica's laws specifically.  *See* Owen Decl. ¶ 9 & Ex. B, Ex. C

19  (summary of Ordinance); Furlong Decl. ¶ 8 & Ex. B.[4]

20      Plaintiffs collect and retain extensive information and data supplied by hosts

21  and guests, including personally identifying information.  Owen Decl. ¶ 24; Furlong

22

23

24  [4] As part of the Airbnb Community Compact, Airbnb is committed to helping
    promote responsible home sharing to make cities stronger.  For example, Airbnb
25  discretionarily removes listings that it believes may be offered by hosts with multiple
    "entire home" listings or by unwelcome commercial operators.  Owen Decl. ¶ 13 &
26  Ex. D.  If Airbnb is alerted to shared spaces or private rooms that appear to be
    operated by unwelcome commercial operators or that do not reflect the community
27  vision, it generally will remove such listings.  *Id.*
28

1  Decl. ¶ 13.  Plaintiffs treat this information as confidential and take measures to

2  guard it from public disclosure.  Owen Decl. ¶ 24; Furlong Decl. ¶ 14.

3          Airbnb and HomeAway have different business models and provide different

4  options for hosts and guests to communicate.  Airbnb enables the provision of

5  payment processing services to permit hosts to receive payments electronically.

6  Owen Decl. ¶ 3.  In consideration for the use of its platform, Airbnb receives a fee

7  from both the guest and host, determined as a percentage of the accommodation fee

8  set solely by the host.  *Id.*  In addition, hosts and guests message each other directly

9  through the platform to determine the terms for their bookings.  *Id.*

10          HomeAway hosts pay for services in one of two ways.  First, they may buy

11  subscriptions to advertise their properties for a specified period of time, such as a

12  year.  Furlong Decl. ¶ 4.  Second, they may choose a pay-per-booking option, paying

13  for the services based on a percentage of the total cost of a confirmed booking.  *Id.*

14  Similar to Airbnb, hosts and guests may make rental arrangements through online

15  booking and online payment services using a third-party processor.  *Id.* ¶ 10.  Hosts

16  and guests may also make arrangements through messages using HomeAway's

17  websites, or by exchanging telephone numbers or personal email addresses and

18  communicating directly with one another.  *Id.* ¶ 9.  In instances when hosts and guests

19  arrange rentals and payments on their own, HomeAway may have no information

20  about whether rentals occurred or only such information as is reflected in host-guest

21  communications through the website.  *Id.*

22          **B.**      **Santa Monica's Regulation of Short-Term Rentals**

23          The Ordinance, which took effect June 12, 2015, imposes restrictions on short-

24  term rentals in Santa Monica.  First, it bans "Vacation Rentals," defined as the

25  "[r]ental of any dwelling unit, in whole or in part," to "any person(s) for exclusive

26  transient use of 30 consecutive days or less, whereby the unit is only approved for

27  permanent residential occupancy and not approved for transient occupancy or Home-

28  Sharing as authorized by this Chapter."  §§ 6.20.010(c); 6.20.020(a).  Second, it

permits, under certain conditions, "Home-Sharing," which is defined as "[a]n activity whereby the residents host visitors in their homes, for compensation, for periods of 30 consecutive days or less, while at least one of the dwelling unit's primary residents lives on-site, in the dwelling unit, throughout the visitors' stay." § 6.20.010(a); 6.20.020(a).  In short, the Ordinance outlaws short-term rentals of an entire unit when the host is not present, but allows rentals of a room or portion of a property when the host remains on site throughout the stay.

Hosts that engage in Home-Sharing must meet several requirements, including obtaining and abiding by the terms of a license, collecting and remitting Transient Occupancy Tax ("TOT") and otherwise complying with TOT requirements, taking responsibility for and "actively prevent[ing]" any nuisances caused by home-sharing, and complying with "all applicable laws, including health, safety, building, fire protection, and rent control laws."  § 6.20.020(a).

The Ordinance also imposes duties on "Hosting Platform[s]," defined as any "marketplace in whatever form or format which facilitates the Home-Sharing or Vacation Rental, through advertising, match-making or any other means, using any medium of facilitation, and from which the operator of the hosting platform derives revenues, including booking fees or advertising revenues, from providing or maintaining the marketplace."  § 6.20.010(b).  First, the Ordinance states that "[n]o person, *including any Hosting Platform operator*, shall undertake, maintain, authorize, aid, facilitate or advertise any Home-Sharing activity that does not comply with section 6.20.020 of this Code or any Vacation Rental activity."  § 6.20.030 (emphasis added).  Second, it requires platforms to "[d]isclose to the City on a regular basis each Home-Sharing and Vacation Rental listing located in the City, the names of the persons responsible for each such listing, the address of each such listing, the length of stay for each such listing and the price paid for each stay," § 6.20.050(b).  Third, the Ordinance makes hosting platforms "responsible for collecting all applicable TOTs and remitting the same to the City."  § 6.20.050(a).

1    The Ordinance imposes significant penalties on hosting platforms for failing to
2  abide by any of its requirements.  A violation is either an infraction, punishable by a
3  fine of up to $250, or a misdemeanor, punishable by a fine up to $500, imprisonment
4  for a period not exceeding six months, or both.  § 6.20.100(a).  The Ordinance also
5  provides for administrative fines and administrative penalties.  § 6.20.100(c).  The
6  Ordinance contains no scienter, mental state, or *mens rea* requirement.

7    On July 1, 2016, the City established home-sharing rules that implement the
8  Ordinance.  *See* Declaration of Jonathan H. Blavin ("Blavin Decl.") Ex. A.  Those
9  rules provide, among other things, that reports under Section 6.20.050(b) must be
10  made quarterly.  *Id.* § IV(a).  They also impose additional obligations on hosts,
11  including that hosts not advertise home-sharing with signs outside their property,
12  include the host's business license number in any ad, provide guests information on
13  emergency exit routes, and not operate more than one home-share in Santa Monica.
14  *Id.* § 3.

15    **C.    Santa Monica's Enforcement Efforts Under the Ordinance**

16    The City has issued Airbnb and HomeAway several citations stemming from
17  alleged violations of the Ordinance.  Owen Decl. ¶ 27; Furlong Decl. Ex C.  Under
18  protest, Airbnb and HomeAway have paid the citation fines, which have increased
19  into the tens of thousands of dollars.  Owen Decl. Exs. E-K; Furlong Decl. ¶ 18.

20    The City apparently based the citations solely on a review of listings on the
21  Airbnb and HomeAway websites.  It provided no indication that it had investigated
22  residents who posted the challenged listings or found that any had violated the
23  Ordinance in any respect.  The citations were accompanied by letters asserting there
24  are "hundreds" of listings on Plaintiffs' platforms the City believes are unlawful.
25  Owen Decl. Ex. E at 83; Furlong Decl. Ex. C at 38.  The letters also demand that
26  Plaintiffs remove the listings the City identified and all other similar ads and provide
27  a report identifying all home-sharing and vacation rental listings in the City.  The
28  letters threatened that if alleged violations are not corrected by a certain date, the City

may take further action, such as issuing more administrative fines "and/or referring the case to the City Attorney's Office for prosecution." *Id.*

## III.   ARGUMENT

### A.   Standard for Preliminary Injunction

"A plaintiff seeking a preliminary injunction must show that: (1) she is likely to succeed on the merits, (2) she is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in her favor, and (4) an injunction is in the public interest." *Farris v. Seabrook*, 677 F.3d 858, 864 (9th Cir. 2012). Alternatively, "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* "[I]n the First Amendment context, the moving party bears the initial burden of making a colorable claim that its First Amendment rights have been infringed, or are threatened with infringement, at which point the burden shifts to the government to justify the restriction." *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1115-16 (9th Cir. 2011).  Plaintiffs' motion satisfies these standards.

### B.   Plaintiffs are Likely To Succeed on the Merits of Their Claims

#### 1.   Section 230 of the CDA Preempts the Ordinance

##### (a)   Section 230 Forecloses Attempts to Hold a Website Liable for Allegedly Unlawful Content of its Users

The CDA bars the government from imposing liability on websites based on content supplied by third parties.  Because this is precisely what the Ordinance does, it violates the CDA and is preempted.

Under Section 230, "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  47 U.S.C. § 230(c)(1).  The law bars liability "under any State or local law that is inconsistent with this section."  *Id.* § 230(e)(3).  "By its plain language, [Section] 230 creates a federal immunity to any cause of action that

-8-

1  would make service providers liable for information originating with a third-party

2  user." *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997).

3     In providing a "broad grant of webhost immunity," the CDA "gives effect to

4  Congress's stated goals" of "'promot[ing] the continued development of the Internet

5  and other interactive computer services,'" and "'preserv[ing] the vibrant and

6  competitive free market that presently exists for the Internet.'"  *Fair Hous. Council of*

7  *San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1174-75, 1180 (9th

8  Cir. 2008) (en banc); *see also Batzel v. Smith*, 333 F.3d 1018, 1027 (9th Cir. 2003)

9  (CDA is designed "to promote the development of e-commerce").  Congress

10  recognized the Internet would not flourish otherwise, "given the volume of material

11  communicated through [the Internet], the difficulty of separating lawful from

12  unlawful speech, and the relative lack of incentives to protect lawful speech."

13  *Universal Commc'n Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413, 419 (1st Cir. 2007).  In

14  other words, "Section 230 [] sought to prevent lawsuits from shutting down websites

15  and other services on the Internet." *Batzel*, 333 F.3d at 1028.

16     In enacting Section 230, Congress also intended to "encourage voluntary

17  monitoring" and the creation of innovative platforms by immunizing websites from

18  liability based on efforts to screen user content. *Carafano*, 339 F.3d at 1122-23.

19  Thus, Section 230 forbids actions against a website "for the exercise of its editorial

20  and self-regulatory functions" about whether to block or allow content. *Zeran*, 129

21  F.3d at 331.  "[A]ny activity that can be boiled down to deciding whether to exclude

22  material that third parties seek to post online is perforce immune under Section 230."

23  *Roommates.com*, 521 F.3d at 1170-71.  Section 230 also prohibits challenges to the

24  "construct and operation" of a website, because a provider's policies and practices

25  are "as much an editorial decision … as a decision not to delete a particular posting."

26  *Lycos*, 478 F.3d at 422.

27     Every federal circuit has adopted a broad interpretation of Section 230

28  immunity, resulting in "a capacious conception of what it means to treat a website

operator as the publisher or speaker of information provided by a third party." *Jane Doe No. 1 v. Backpage.com*, *LLC*, 817 F.3d 12, 19 (1st Cir. 2016).[5] Accordingly, courts have held Section 230 provides immunity to online marketplaces, classified ad websites, and other sites that host third-party content from any liability stemming from user listings and advertisements. *See, e.g.*, *Gentry v. eBay, Inc.*, 99 Cal. App. 4th 816 (2002) (eBay immune from liability for fake sports memorabilia listings); *Mazur v. eBay Inc.*, 2008 WL 618988, at *9 (N.D. Cal. Mar. 4, 2008) (eBay immune under CDA from claim it failed to screen listings); *Gibson v. Craigslist, Inc.*, 2009 WL 1704355, at *4 (S.D.N.Y. June 15, 2009) (Craigslist immune under CDA for sale of allegedly unlawful item resulting from listing); *Hill v. StubHub, Inc.*, 219 N.C. App. 227, 247-48 (2012) (CDA barred claim that StubHub hosting of event ticket sales violated state anti-scalping law); *Inman v. Technicolor USA, Inc.*, 2011 WL 5829024, at *7 (W.D. Pa. Nov. 18, 2011) ("eBay may not be held liable under the CDA" for "facilitat[ing]" sale). The same result is required here.[6]

---

[5] *See also Ricci v. Teamsters Union Local 456*, 781 F.3d 25, 28 (2d Cir. 2015); *Jones v. Dirty World Entm't Recordings LLC*, 755 F.3d 398, 407 (6th Cir. 2014); *Johnson v. Arden*, 614 F.3d 785, 791 (8th Cir. 2010); *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008); *Chi. Lawyers' Comm. for Civil Rights Under Law, Inc. v. Craigslist, Inc.*, 519 F.3d 666, 671 (7th Cir. 2008); *Lycos*, 478 F.3d at 419; *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1321 (11th Cir. 2006); *Green v. Am. Online*, 318 F.3d 465, 471 (3d Cir. 2003); *Ben Ezra, Weinstein, & Co. v. Am. Online Inc.*, 206 F.3d 980, 985 n.3 (10th Cir. 2000); *Zeran*, 129 F.3d at 331.

[6] Indeed, at least one city already has concluded that punishing hosting platforms for the content of third-party short-term rental listings is impermissible. In July 2016, Airbnb and HomeAway challenged a similar Anaheim ordinance. Unlike the law here, the Anaheim law contained a "savings clause," which stated the law "shall be interpreted in accordance with otherwise applicable state and federal law(s) and will not apply if determined by the city to be in violation of any such law(s)." Anaheim Mun. Code § 4.05.120.030; *see id.* § 4.05.130.0103. On August 10, the acting City Attorney for Anaheim provided Airbnb and HomeAway a letter stating "the City has completed its review of the applicable law and made an administrative determination" that, "under the current state of the law," the ordinance "does not and will not be applied to Airbnb, HomeAway or other hosting platforms." Blavin Decl. Ex. B. As a spokesperson for Anaheim stated, "[a]fter considering federal communications law,

-10-

**(b)      The Ordinance Impermissibly Attempts to Hold Plaintiffs Liable for Content Provided By Users**

To evaluate Section 230 immunity, courts apply a three-part test.  Section 230 applies when (1) the defendant is a "provider or user of an interactive computer service" and (2) any "state law … seeks to treat" it "as a publisher or speaker" (3) "of information provided by another information content provider."  *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1100-01 (9th Cir. 2009).  Each of these elements is met here.

Plaintiffs easily satisfy the first element.  Plaintiffs are "interactive computer service" providers because they provide information to "multiple users" by giving them "access … to a computer server," 47 U.S.C. § 230(f)(2).  As the Ninth Circuit has held, the "most common interactive computer services are websites."  *Roommates.com*, 521 F.3d at 1162 n.6.

The third element is also satisfied, given that third parties create and provide short-term rental listings.  *See, e.g.*, *Jane Doe No. 1*, 817 F.3d at 19 (CDA applies where "contents of all of the relevant advertisements were provided" by third parties).  Airbnb and HomeAway do not create or post the listings on their websites and cannot obtain licenses for their rentals.  Owen Decl. ¶ 7; Furlong Decl. ¶ 6.  The Ordinance recognizes this, defining "hosting platform" as a "marketplace" that "facilitates the Home-Sharing or Vacation Rental, through advertising, match-making or any other means."  § 6.20.010(b); *see also* Blavin Decl. Ex. D at 23 (City Council report: "*Airbnb hosts* list their properties"; listings allow "*hosts to promote* properties" to prospective guests (emphases added)).

The second element, too, is met here, because the Ordinance treats Plaintiffs as the publishers of hosts' listings.  In this inquiry, "what matters is not the name of the cause of action," but whether the law "inherently requires the court to treat the defendant as the 'publisher or speaker' of content provided by another."  *Barnes*, 570

---

we won't be enforcing parts of Anaheim's short-term rental rules covering online hosting sites."  *Id.*, Ex. C.

F.3d at 1101-02.  Here, in several respects, the Ordinance seeks to impose liability on hosting platforms for publishing third-party content.

*Liability for Publishing Unlawful Third-Party Content.*  First, the Ordinance imposes criminal and civil liability on hosting platforms for publishing third-party listings for properties that the City believes cannot be rented under the Ordinance. The Ordinance makes it unlawful for hosting platforms to "undertake, maintain, authorize, aid, facilitate or advertise any Home-Sharing activity that does not comply with [the Ordinance] or any Vacation Rental activity."  § 6.20.030.  Invoking this provision, the City already has fined Plaintiffs for allowing hosts to post listings it believes are improper and threatened to penalize Plaintiffs should they fail to remove these and other ads.  Owen Decl. Ex. G at 96 (citation for "Advertisement of unlawful Vacation Rental … on AirBnB Inc.'s website"); Furlong Decl. Ex. C at 40 (same with respect to HomeAway).  Yet, as noted above, Section 230 does not permit the state to punish websites for publishing or failing to remove third-party content. *See also Carafano*, 339 F.3d at 1123 (CDA "provides broad immunity for publishing content provided primarily by third parties"); *Barnes*, 570 F.3d at 1102 ("a plaintiff cannot sue someone for publishing third-party content" under CDA).

Thus, in a trilogy of analogous cases, courts enjoined state laws under the CDA that purported to impose liability on websites that published third-party ads arguably concerning commercial sex acts.  In each case, courts struck down state laws imposing requirements on websites to review and screen ads (under the threat of criminal liability) as contrary to Section 230 and the First Amendment.  *See Backpage.com, LLC v. Hoffman*, 2013 WL 4502097, at *6 (D.N.J. Aug. 30, 2013) (statute "runs afoul of Section 230 by imposing liability" for "publishing" third-party ads); *Backpage.com, LLC v. Cooper*, 939 F. Supp. 2d 805, 824 (M.D. Tenn. 2013) (enjoining statute where "sale of online advertisements regulated by [law] derives" from site's "status" as "publisher"); *Backpage.com, LLC v. McKenna*, 881 F. Supp. 2d 1262, 1273-74 (W.D. Wash. 2012) (enjoining enforcement of statute because it

"treat[ed]" websites as "the publisher or speaker of information created by third parties"). The Santa Monica Ordinance is no different: it imposes liability on websites for publishing content the City has deemed to be unlawful.  Section 230 forbids this.

   ***Requiring Websites to Pre-Screen Content.***  The Ordinance's prohibition on publishing amounts to a mandate that websites pre-screen content to be sure no ad is unlawful.  "[S]creening" a listing "is akin to deciding whether to publish" and a website "is immune under section 230 for its screening decisions." *Mazur*, 2008 WL 618988, at *9 (eBay immune for alleged failure to screen); *see also Almeida*, 456 F.3d at 1321 n.3 (CDA "clearly inconsistent with state law that makes" sites "liable based on their efforts to screen").  As the *McKenna* court held, "by imposing liability on online service providers who do not pre-screen content or who 'know' that third party content may violate state law, the statute drastically shifts the unique balance that Congress created with respect to the liability of online service providers that host third party content."  881 F. Supp. 2d at 1274; *see also Cooper*, 939 F. Supp. 2d at 825 (law violates CDA where "rather than encouraging unfettered speech," it "imposes significant penalties for certain ads," and for plaintiffs, "preventing liability could amount to screening millions of advertisements").

   ***Liability for Failing to Remove Unlawful Content.***  In addition, the Ordinance impermissibly penalizes Plaintiffs for failing to remove content.  The City already has applied the Ordinance to do just that with respect to HomeAway, issuing citations for failing to take down listings identified in prior citations.  Furlong Decl. Ex. C at 50-52.  This, too, targets Plaintiffs' acts as publishers.  Congress enacted Section 230 to "protect websites against the evil of liability for failure to remove offensive content." *Roommates.com*, 521 F.3d at 1174.  It is irrelevant that a website knows or should know of content the government has deemed unlawful, because to "impose liability on the basis of such conduct necessarily involves treating the liable party as a publisher of the content it failed to remove." *Barnes*, 570 F.3d at 1102-03; *see also Gavra v. Google Inc.*, 2013 WL 3788241, at *2 (N.D. Cal. July 17, 2013) (CDA

-13-

provides immunity where site "refrain[s] from removing objectionable content, despite receiving notice" of it); *Zeran*, 129 F.3d at 333 (notice-based liability would destroy "the vigor of Internet speech and … service provider self-regulation"); *Hill*, 219 N.C. App. at 247-48 (site allowing ticket sales immune for claims it facilitated violation of anti-scalping law; "knowledge of unlawful content does not strip a website of the immunity from liability").

     ***Verifying that Hosts Comply with Santa Monica Laws.***  Notably, the Ordinance does not simply require Plaintiffs to check whether a listing is for a vacation rental or home-sharing or whether the host has included the license number issued by the City on his or her listing, but to verify that the rental properties are in compliance with *all* applicable laws, such as providing emergency exit routes to guests, placing guard rails on windows, installing smoke detectors, and not placing ads for home-sharing on the exterior of the unit to be rented.  *See* § 6.20.020(a)(1), (4), (5); Santa Monica Mun. Code §§ 8.44.100; 8.12.060; Blavin Decl. Ex. A § II(b),(f) (regulations).  Websites such as Plaintiffs cannot possibly verify all of this information, which would likely require repeated on-site visits to every property.  *See* Owen Decl. ¶ 18; Furlong Decl. ¶ 16.  The CDA protects sites from any liability for their failure to verify information associated with third-party content.  *See, e.g.*, *Jane Doe No. 1,* 817 F.3d at 16, 20-21 (CDA protects website against lack of "phone number verification" for numbers in ads); *Doe v. Friendfinder Network, Inc.*, 540 F. Supp. 2d 288, 294-95 (D.N.H. 2008) ("§ 230 bars" claims that defendants "fail[ed] to verify that a profile corresponded to the submitter's true identity"); *Doe v. MySpace, Inc.*, 474 F. Supp. 2d 843, 850 (W.D. Tex. 2007), *aff'd*, 528 F.3d 413 (5th Cir. 2008) (claims that "MySpace liable for ineffective … policies relating to age verification" were "barred under" CDA).  Instead, "[f]aced with potential liability" for each violation by a host, "interactive computer service providers might choose to severely restrict the number and type of messages posted."  *Zeran*, 129 F.3d at 331.

*Dictating Construct and Operation of Websites.*  Finally, the Ordinance directly regulates Plaintiffs' decisions regarding the structure and operation of their websites.  Again, platforms must verify whether the host has a license and the rental complies with *all* other aspects of City law, no matter how burdensome—indeed impossible—compliance with such an obligation would be.  This includes, for example, verifying that ads posted on the site include a host's business license number.  Blavin Decl. Ex. A § II(d).  But under the CDA, the government cannot dictate the format, structure, or operation of a website.  For example, in *Jane Doe No. 1 v. Backpage.com*, the plaintiffs challenged "choices that Backpage has made about the posting standards for advertisements" that were allegedly "designed to encourage sex trafficking," such as the lack of "phone number verification" for numbers in ads, the "option to anonymize e-mail addresses," and the site's "acceptance of anonymous payments."  817 F.3d at 16, 20-21.  The First Circuit rejected the argument that such conduct was "distinguishable from publisher functions," holding that the CDA "extends to the formulation of precisely the[se] sort of website policies and practices." *Id.* at 20.  Such features reflect "choices about what content can appear on the website and in what form," and "decisions in structuring [] website and posting requirements are publisher functions entitled to section 230(c)(1) protection."  *Id.* at 21-22; *see also Fields v. Twitter, Inc.*, 2016 WL 4205687, at *7 (N.D. Cal. Aug. 10, 2016) (Twitter's "decisions to structure and operate itself as a 'platform … allowing for the freedom of expression'" generally available to all reflect CDA-protected "'choices about what [third-party] content can appear on [Twitter] and in what form'").

In sum, the Ordinance fundamentally contradicts section 230 and the Internet freedom it protects.  The Court should enjoin its enforcement.

> **2.      The Ordinance Violates the First Amendment Because It Is a Content-Based Restriction on Speech that Is Not Narrowly Tailored to Serve a Substantial Government Interest**

Plaintiffs are also likely to succeed on their claim that the Ordinance violates the First Amendment.  The Ordinance seeks to proscribe and punish speech, in the

1  form of online rental listings, based on the content of that speech.  The City cannot

2  justify that restriction under the First Amendment.

3          There is no question the Ordinance's prohibition on certain rental listings seeks

4  to punish speech.  It imposes criminal and civil penalties on any "hosting platform"

5  that "advertise[s] any Home-Sharing activity" that does not comply with the

6  Ordinance.  § 6.20.030.  There also is no question the Ordinance imposes a "content-

7  based" restriction, which "may be justified only if the government proves that they

8  are narrowly tailored to serve compelling state interests."  *Reed v. Town of Gilbert*,

9  135 S. Ct. 2218, 2226 (2015); *see also Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570

10  (2011).  "Government regulation of speech is content based if a law applies to

11  particular speech because of the topic discussed or the idea or message expressed."

12  *Reed*, 135 S. Ct. at 2227.  The provisions of the Ordinance apply to listings for short-

13  term rentals and are therefore content-based.  This is obvious not only from the face

14  of the Ordinance, but also the fact the City has already penalized Plaintiffs for the

15  content of listings.  Owen Decl. Exs. E-K; Furlong Decl. Ex. C.

16          "In the ordinary case, it is all but dispositive to conclude that a law is content-

17  based."  *Sorrell*, 564 U.S. at 571.  Such laws are "presumptively unconstitutional,"

18  *Reed*, 135 S. Ct. at 2226, even when they pertain to commercial speech.[7]  "Under a

19  commercial speech inquiry, it is the State's burden to justify its content-based law as

20  consistent with the First Amendment."  *Sorrell*, 564 U.S. at 571-72; *see Cent. Hudson*

21  *Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557, 564 (1980).  The

22  government must show "the statute directly advances a substantial government

23  interest" and there is a "'fit between the legislature's ends and the means chosen to

24  accomplish those ends.'"  *Sorrell*, 564 U.S. at 572; *see also Florida Bar v. Went For*

25  *It, Inc.*, 515 U.S. 618, 632 (1995) (law must be "'narrowly tailored to achieve the

26  _____

27  [7] Plaintiffs do not concede that the Ordinance regulates only commercial speech but
    analyze it as though it does because "the outcome is the same" under the commercial

28  speech or strict scrutiny tests.  *Sorrell*, 564 U.S. at 571.

desired objective'"); *Cent. Hudson*, 447 U.S. at 564-66.

The City cannot demonstrate that the Ordinance directly advances or is narrowly tailored to any substantial or compelling government interest. Even assuming restrictions on short-term rentals serve such an interest, the City cannot show that a *restriction on speech* is necessary to achieve the interest. "The normal method of deterring unlawful conduct is to impose an appropriate punishment on the person who engages in it," not to punish those who engage in speech regarding the conduct. *Bartnicki*, 532 U.S. at 529; *see also Village of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 637 (1980) (invalidating speech restriction where conduct "can be prohibited and the penal laws used to punish such conduct directly"). Here, the City did just that with its restrictions on Home-Sharing and Vacation Rentals. But the law at issue, by its own terms, also operates in an *indirect* way: It targets the behavior of hosts by imposing liability on hosting platforms.

This principle is especially relevant here, where the City has acknowledged it could—and indeed, *already does*—enforce its restrictions on short-term rentals directly against hosts. The City has recently stepped up its enforcement efforts against hosts, which has led to a "sharp increase in the number of citations issued," Blavin Decl. Ex. E at 44, and the first criminal prosecution under the Ordinance, *id.*, Ex. F. Hosts who violate the Ordinance face fines of up to $500 and potential jail time. *See* § 6.20.100(a). The City cannot explain why continued enforcement against hosts, as opposed to a restriction on speech, is insufficient to achieve its aims. This is insufficient under the First Amendment. *See, e.g.*, *Valle Del Sol Inc. v. Whiting*, 709 F.3d 808, 826-27 (9th Cir. 2013) (enjoining law where state did not show ineffectiveness of directly enforcing "preexisting" laws to address "safety concerns" instead of restricting speech); *McKenna*, 881 F. Supp. 2d at 1284 (invaliding law based on "fail[ure] to demonstrate why a law targeting only the individuals who post ads would not be effective, rather than seeking to impose felony liability on online service providers"); *Cooper*, 939 F. Supp. 2d at 840 (similar).

1    The City cannot argue that the Ordinance's imposition of liability on hosting

2    platforms is justified because it is efficient.  *See Thompson v. W. States Med. Ctr.*,

3    535 U.S. 357, 373 (2002) (speech restrictions must be "a necessary as opposed to

4    merely convenient means of achieving [government's] interests"); *Yniguez v.*

5    *Arizonans for Official English*, 42 F.3d 1217, 1234 (9th Cir. 1994) ("The government

6    cannot restrict the speech of the public … just in the name of efficiency.").  The City

7    seeks to place the burden of verifying each host's compliance with the law on hosting

8    platforms—an overwhelming burden, given the need to verify that *every* listing in the

9    City advertises a rental that complies with "*all* applicable laws."  § 6.20.020(a)(5)

10   (emphasis added); *see* Owen Decl. ¶¶ 18-19; Furlong Decl. ¶¶ 15-16.  The City may

11   not seek to "shift[] the burden of enforcing the law from the taxpayer" to speakers or

12   publishers of information simply because it is easier to do so.  *News & Sun Sentinel*

13   *Co. v. Bd. of Cnty. Comm'rs*, 693 F. Supp. 1066, 1072 (S.D. Fla. 1987).

14   Although the Ordinance may seek to target primarily listings for rentals the

15   City has deemed unlawful, it will inevitably chill protected commercial speech.

16   Many short-term rentals remain lawful in Santa Monica.  There often is no practical

17   way for hosting platforms to determine, from the face of a listing, whether it features

18   a lawful rental or not.  To assure themselves of avoiding the criminal sanction and

19   fines the Ordinance imposes, hosting platforms could be forced to cease publishing

20   *any* listings in Santa Monica, even for lawful rentals.  Owen Decl. ¶ 22; Furlong

21   Decl. ¶ 16.  The Ordinance thus would "impermissibly impose a form of self-

22   censorship" on platforms like Plaintiffs that cannot distinguish between lawful and

23   unlawful ads.  *Braun v. Soldier of Fortune Magazine, Inc.*, 968 F.2d 1110, 1117,

24   1118 (11th Cir. 1992) (First Amendment protection applies unless ad is unlawful "on

25   its face"); *cf. Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626, 651 (1985)

26   (speech restrictions must not "chill[] protected commercial speech").

27

28

3.   **The Ordinance Violates the First Amendment and Due Process Clause Because It Imposes Criminal Penalties on Speech Without Any Proof of Scienter**

The Ordinance also violates the First Amendment because it imposes criminal penalties on hosting platforms without requiring a showing that the platform *knew* the published listing at issue was deemed unlawful by the City under the Ordinance.

The Supreme Court has long rejected the imposition of strict criminal liability for the possession or dissemination of information, even where the content itself lacks First Amendment protection.  In *Smith v. California*, 361 U.S. 147 (1960), the Supreme Court struck down a Los Angeles ordinance making it a crime for booksellers to possess obscene books, noting the law would require booksellers to review every book or face strict criminal liability, which "would tend to restrict the public's access to forms of the printed word which the State could not constitutionally suppress directly."  *Id.* at 153-54.  The Court has said the same in later cases—the First Amendment bars imposing liability on publishers absent proof of *mens rea* that speech is, in fact, unlawful.  *See New York v. Ferber*, 458 U.S. 747, 765 (1982) ("[C]riminal responsibility may not be imposed without some element of scienter on the part of the defendant."); *cf. United States v. X-Citement Video, Inc.*, 513 U.S. 64, 78 (1994).  The Court has made clear that similar principles apply in the civil context.  *See, e.g.*, *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 52 (1988) ("A rule that would impose strict liability on a publisher for [unprotected speech] would have an undoubted 'chilling' effect.").

The Ordinance violates this well-established principle.  It imposes severe criminal and civil penalties on publishers without any *mens rea* requirement.  For instance, the Ordinance makes it unlawful for any hosting platform to "advertise any Home-Sharing activity that does not comply with [the Ordinance]," regardless whether the platform *knows* the featured Home-Sharing activity is non-compliant.  § 6.20.030.  But a listing might be non-compliant for several reasons—failure by the host to remain present during the guest's entire stay, failure to maintain a business

-19-

license, failure to actively prevent nuisances, or most expansively, failure to comply with "all applicable laws," including laws requiring guardrails on windows and smoke detectors.  § 6.20.020(a)(1), (4), (5); Santa Monica Mun. Code §§ 8.44.100; 8.12.060.  As such, the City, seeks to create a strict-liability crime for publishing ads for rentals that prove to be unlawful for one reason or another under City law, even if the hosting platform has no knowledge of the violation.  The Ordinance is therefore impermissible under the First Amendment.

### 4.  The SCA Preempts the Ordinance's Disclosure Provisions

The Ordinance requires hosting platforms to "disclose to the City" on a quarterly basis each short-term rental listing in the City, as well as the host's name, rental address, the length of stay, and the price paid.  § 6.20.050(b); Blavin Decl. Ex. A § IV(a).  That disclosure provision conflicts with and is preempted by the SCA.

The SCA, in relevant part, prohibits websites like Airbnb and HomeAway from disclosing any "record or other information pertaining to a … customer" to "any government entity" absent a subpoena or court order.  18 U.S.C. § 2702(a)(3); *see id.* §§ 2702(c), 2703.  "The SCA was enacted because the advent of the Internet presented a host of potential privacy breaches that the Fourth Amendment does not address." *Quon v. Arch Wireless Operating Co.*, 529 F.3d 892, 900 (9th Cir. 2008), *rev'd on other grounds*, *City of Ontario v. Quon*, 560 U.S. 746 (2010).

The SCA's protections depend, in part, on whether an online provider is acting as an electronic communications service ("ECS") or a remote computing service ("RCS") with regard to the information sought.  *See, e.g.*, 18 U.S.C. § 2703(a); § 2703(b).  An ECS is "any service which provides to users thereof the ability to send or receive … electronic communications," and an RCS is "the provision to the public of computer storage or processing services by means of an electronic communications system."  18 U.S.C. § 2510(15), § 2711(2).  In simple terms, an ECS provides communication services to users and stores them temporarily, while an RCS stores and processes user information for longer periods, including to provide services to

1   users.  Plaintiffs are both ECS and RCS because they provide online networks and

2   communications services to users.  Owen Decl. ¶ 3; Furlong Decl. ¶ 2; *see Crispin v.*

3   *Christian Audigier, Inc.*, 717 F. Supp. 2d 965, 980, 990 (C.D. Cal. 2010) (social

4   networking site that provides messaging services and stores messages is an ECS and

5   RCS provider).

6         The SCA imposes different restrictions depending on the type of information

7   the government seeks, two of which are implicated here.

8         First, a governmental entity such as the City may not obtain even basic

9   customer information absent a subpoena.  *See* 18 U.S.C. § 2703(c)(2); *see*

10  *Telecomms. Regulatory Bd. v. CTIA-Wireless Ass'n*, 752 F.3d 60, 68 (1st Cir. 2014)

11  (The "SCA clearly prohibits communications providers from disclosing to the

12  government basic subscriber information—including a customer's name [and]

13  address …—without a subpoena.").  Because the Ordinance requires Plaintiffs to

14  disclose customer names, without a subpoena, it "directly conflict[s]" with and is

15  "thus preempted by the SCA."  *Id.*

16        Second, the government may not obtain other customer information absent

17  consent, a warrant, or an order under 18 U.S.C. § 2703(d).  Yet the Ordinance

18  requires Plaintiffs to disclose the rental address, length of stay, and price paid.

19  § 6.20.050(b); Blavin Decl. Ex. A § IV(a).  Absent consent, the City cannot compel

20  this information unless it obtains a court order requiring it to "offer[] *specific and*

21  *articulable facts* showing that there are reasonable grounds to believe that the

22  contents of a wire or electronic communication, or the records or other information

23  sought, are *relevant and material to an ongoing criminal investigation*."  18 U.S.C.

24  § 2703(d) (emphases added).  By requiring this additional information without

25  requiring an order, the Ordinance runs afoul of the SCA.

26             **5.    Plaintiffs Are Likely to Succeed on Their Fourth Amendment**
                      **Claim Because the Ordinance Requires Them to Turn Over**
27                    **Business Records Without Prior Judicial Authorization**

28        The Ordinance's disclosure provision—and the City's threats to take "further

-21-

enforcement action" unless Plaintiffs comply with it, Owen Decl. Exs. E-K, Furlong Decl. Ex. C—also conflict with the Fourth Amendment.  Particularly in light of the Supreme Court's recent decision in *City of Los Angeles v. Patel*, 135 S. Ct. 2443 (2015), Plaintiffs are likely to prevail on their claim that this requirement to make business records available to the City with no prior judicial authorization or review violates the Fourth Amendment's prohibition on unreasonable searches and seizures.

*Patel* concerned the validity of a Los Angeles ordinance that sought to require hotel and motel owners to produce to the police, on demand, a guest registry that included a variety of information (such as check-in and check-out dates, room rates, method of payment, and so forth).  135 S. Ct. at 2447-48.  The Supreme Court held the law facially invalid because it compelled production of hotels' business records— in which the hotel owners have a constitutionally-protected expectation of privacy— without any "prior approval by a judge or magistrate judge," in the form of either a warrant or administrative subpoena.  *Id*. at 2452; *see also Free Speech Coal., Inc. v. Attorney General*, 825 F.3d 149, 169-71 (3d Cir. 2016) (applying *Patel* and invalidating warrantless search regime for producers of sexually explicit materials).

The same is true here.  Plaintiffs, like the hotel owners in *Patel*, have an expectation of privacy in their business records, as they carefully guard such records from disclosure.  *See* Owen Decl. ¶ 24; Furlong Decl. ¶¶ 14, 17.  And as in *Patel*, because Plaintiffs have a Fourth Amendment interest in their business records, the City must either subpoena their records or obtain a warrant, thereby giving Plaintiffs a fair opportunity to challenge the scope and burden of the disclosure sought by the City before a neutral magistrate prior to complying with the City's demands.

## C.    Plaintiffs Face Irreparable Harm Unless the Ordinance is Enjoined

For several reasons, Plaintiffs and their users are likely to suffer irreparable harm.

*First*, "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod*, 427 U.S. at 373.  *See*

-22-

*also Farris*, 677 F.3d at 868.  Indeed, "irreparable harm … exists" where there "is the potential for self-censorship," even in "the absence of hardship from imminent prosecution or threat of prosecution."  *N. Y. State Bar Ass'n v. Reno*, 999 F. Supp. 710, 715-16 (N.D.N.Y. 1998).  Such harm to free speech is relevant both under the First Amendment and the CDA, which as the Ninth Circuit has held, "sought to further First Amendment … interests on the Internet."  *Batzel*, 333 F.3d at 1028 (citing 141 Cong. Rec. H8469–72).

*Second*, Plaintiffs face the threat of prosecution and significant penalties under a preempted law, which the Ninth Circuit and other courts recognize constitutes irreparable harm.  *See Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) ("irreparable harm" where there was "a credible threat of prosecution" under preempted law); *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992) ("irreparable injury" where state governments "made clear that they would seek to enforce" preempted law and plaintiffs face "Hobson's choice" of "expos[ing] themselves to potentially huge liability" or "suffer[ing] the injury of obeying" law).

*Third*, the risk of criminal penalties, including possible jail time, additionally constitutes irreparable harm.  *See Hoffman*, 2013 WL 4502097, at *12 (irreparable harm where "[a]bsent injunctive relief, Plaintiffs may face serious criminal liability"); *Toomer v. Witsell*, 334 U.S. 385, 392 (1948) (irreparable harm where "defiance would have carried … the risk of heavy fines and long imprisonment").[8]

The prospect of criminal and civil penalties is not just speculative or hypothetical.  The City has already enforced the Ordinance against Plaintiffs, issued

---

[8] Likewise, the risk of fines potentially reaching into the millions of dollars constitutes irreparable harm.  The Ordinance authorizes fines of up to $500 for each violation, and there are over a thousand listings in Santa Monica on Plaintiffs' websites.  *See, e.g.*, Owen Decl. ¶ 21.  Courts have found irreparable harm based on fines of this magnitude.  *See, e.g.*, *Satellite Television of N.Y. Assocs. v. Finneran*, 579 F. Supp. 1546, 1551 (S.D.N.Y. 1984) (irreparable harm "readily" shown for "fine of $2,000 a day").

fines of increasing magnitude, and repeatedly threatened Plaintiffs with "further enforcement actions."  Owen Decl. Exs. E-K.  In these circumstances, courts have not hesitated to find irreparable harm.  *See Cooper*, 939 F. Supp. 2d at 819 (high likelihood of enforcement where Backpage.com was "direct target" of law).

*Fourth*, the Ordinance disrupts Plaintiffs' operations, threatening a loss of consumer goodwill.  To comply with the Ordinance and avoid continuing liability, Plaintiffs would need to verify whether Santa Monica rentals are licensed and otherwise comply with City law, but the law does not provide any procedures for accomplishing that.  Owen Decl. ¶ 17; Furlong Decl. ¶ 15.  Plaintiffs not only might need to redesign their websites, but also inspect every Santa Monica rental to determine whether it complies with all City laws.  Owen Decl. ¶¶ 18, 20; Furlong Decl. ¶ 16.  This would be extremely burdensome, if not impossible.  Owen Decl. ¶ 19; Furlong Decl. ¶ 16.  And the only way to avoid liability would be to remove all Santa Monica listings, including lawful ones.  *Id.*  The resulting loss of consumer trust and goodwill itself constitutes irreparable harm.  *Am. Trucking Assocs. v. City of Los Angeles*, 559 F.3d 1046, 1058 (9th Cir. 2009) (irreparable harm where preempted law will cause "part of" plaintiff's "business" and "goodwill" to "evaporate"); *Mahroom v. Best W. Int'l, Inc.*, 2009 WL 248262, at *3 (N.D. Cal. Feb. 2, 2009) ("[m]ajor disruption" of business threatening "goodwill" is "irreparable harm").

Finally, when (as here) unlawful regulations create the erroneous perception that a company's activities are illegal, the resulting loss in customer goodwill is irreparable.  *See Aeroground, Inc. v. City & County of San Francisco*, 170 F. Supp. 2d 950, 959 (N.D. Cal. 2001) (irreparable harm to goodwill where party "is refusing to comply with a rule that it believes is preempted by federal law").

### D.   **The Balance of Equities and Public Interest Favor Plaintiffs**

The balance of equities tips decidedly in favor of Plaintiffs.  Plaintiffs face deprivation of their constitutional rights, which far outweighs any harm the City might claim.  *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009).

1   Harms to Plaintiffs in the form of additional criminal penalties and fines, as well as
2   lost goodwill, also weigh in their favor.  In contrast, the City can claim little harm:  It
3   may still enforce the Ordinance against owners who violate it, which will allow the
4   City to pursue the Ordinance's stated goals.

5          The public interest also strongly favors Plaintiffs.  The public interest is served
6   by "the Constitution's declaration that federal law is to be supreme." *Am. Trucking*,
7   559 F.3d at 1059-60; *see Bank One, Utah v. Guttau*, 190 F.3d 844, 847-48 (8th Cir.
8   1999) ("public interest will perforce be served by enjoining the enforcement of
9   [preempted] state law").  In addition, "'it is always in the public interest to prevent
10  the violation of a party's constitutional rights.'"  *Melendres v. Arpaio*, 695 F.3d 990,
11  1002 (9th Cir. 2012).  It also is in the public interest to protect Plaintiffs from
12  criminal liability and lost consumer goodwill resulting from unlawful regulation.  By
13  contrast, an injunction would not prevent the City from enforcing its laws against
14  non-compliant hosts.

15  **IV.   <u>CONCLUSION</u>**

16         For the foregoing reasons, the Court should grant the Motion.

17  DATED:  September 2, 2016              MUNGER, TOLLES & OLSON LLP
18
19                                        By:  */s/ Jonathan H. Blavin*
20                                             JONATHAN H. BLAVIN
                                          Attorneys for Plaintiff Airbnb, Inc.
21
22
23                                        DAVIS WRIGHT TREMAINE LLP
24
25                                        By:  */s/ Eric M. Stahl*
                                             ERIC M. STAHL
26                                        Attorneys for Plaintiff HomeAway.com, Inc.
27
28

MOTION FOR PRELIMINARY INJUNCTION