JONATHAN H. BLAVIN (State Bar No. 230269)
jonathan.blavin@mto.com
ELLEN M. RICHMOND (State Bar No. 277266)
ellen.richmond@mto.com
JOSHUA PATASHNIK (State Bar No. 295120)
josh.patashnik@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, Twenty-Seventh Floor
San Francisco, CA 94105-4000
Telephone: (415) 512-4000
Facsimile: (415) 512-4077

JOHN W. SPIEGEL (State Bar No. 78935)
john.spiegel@mto.com
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, Thirty-Fifth Floor
Los Angeles, California 90071-1560
Telephone: (213) 683-9100
Facsimile: (213) 687-3702

Attorneys for Plaintiff Airbnb, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| AIRBNB, INC., and HOMEAWAY.COM, INC.,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF SANTA MONICA,<br><br>Defendant. | Case Nos. 2:16-cv-6645, 2:16-cv-6641<br><br>**DECLARATION OF DAVID OWEN IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |

# DECLARATION OF DAVID OWEN

I, David Owen, declare as follows:

1. I am Head of Policy Strategy for Airbnb, Inc. ("Airbnb"). I am over the age of 18 years and maintain an office at 888 Brannan Street, Suite 400, San Francisco, CA 94103. I have personal knowledge of the matters set forth in this declaration, and if called as a witness, I could and would testify under oath as follows.

## The Airbnb Platform

2. Airbnb was founded in 2008. Airbnb provides an Internet platform and online marketplace through which third parties listing their accommodations ("hosts") and third parties desiring to book accommodations ("guests") can locate each other, communicate with each other, and enter into direct agreements to reserve and book travel accommodations on a short and long-term basis.

3. Airbnb's Internet website, located at www.airbnb.com, provides a means by which interested parties can choose to list their accommodations, a means by which hosts and guests can locate and connect with each other, a means for them to communicate and message one another directly on the platform and determine the material terms for their bookings, and also enables the provision of payment processing services to permit hosts to receive payments electronically. Airbnb also provides electronic storage on its platform for communications between users. In consideration for use of the platform services, Airbnb receives a service fee from the both the guest and from the host, which are determined as a percentage of the accommodation fee set solely by the host.

4. Airbnb has no possessory interest in any of the property or accommodations that third-party hosts may list on the Internet platform. Airbnb therefore is not a proprietor, owner or operator of any accommodation offered by hosts on the Internet platform. Airbnb does not own, manage, operate, or lease

hosts' accommodations, and it cannot and does not grant possessory interests or licenses in accommodations offered by hosts.

5. A true and correct copy of Airbnb's Terms of Service, available at https://www.airbnb.com/terms, is attached hereto as Exhibit A. All users of Airbnb must accept and consent to the Terms of Service in order to post listings on the site or to book reservations. As the Terms of Service state, Airbnb "is not an owner or operator of properties" and "does not own, sell, resell, furnish, provide, rent, re-rent, manage, and/or control properties."

6. Hosts, and not Airbnb, decide whether to list their properties, when to make them available on their calendars, and only hosts set their prices and material terms and decide with whom and when to transact. Airbnb has no control over the physical properties, does not have the right to book or resell or remarket any accommodations for any host, and does not set or otherwise determine the rental price of the accommodations or other terms like security deposits or cleaning fees.

7. Hosts create, and are responsible for, the content that is contained in each individual rental advertisement. Hosts provide the descriptions of their accommodations, set the length of stay of any particular rental, determine the prices and whether the entire property or a portion thereof is available for booking, and decide when and with whom they want to enter into agreements. Hosts also input the minimum or maximum stays for a particular rental. Airbnb does not control the content that is created by hosts and is not responsible for it. Airbnb does not review hosts' listings before the listings appear on Airbnb's platform.

8. Airbnb makes available to hosts and guests a variety of ancillary services, such as a payment processing platform and liability protection programs, but it is hosts themselves, not Airbnb, who exercise control over the content and settings of each rental listing. As the Terms of Service (Exhibit A) state, hosts "alone are responsible for any and all Listings and Member Content [they] post."

9.     Airbnb advises hosts and guests to be aware of applicable local laws in listing properties and making reservations on the site.  For example, the Terms of Service (Exhibit A) at the outset reference parties' "OBLIGATIONS TO COMPLY WITH APPLICABLE LAWS AND REGULATIONS," stating:

> IN PARTICULAR, HOSTS SHOULD UNDERSTAND HOW THE LAWS WORK IN THEIR RESPECTIVE CITIES.  SOME CITIES HAVE LAWS THAT RESTRICT THEIR ABILITY TO HOST PAYING GUESTS FOR SHORT PERIODS…. IN MANY CITIES, HOSTS MUST REGISTER, GET A PERMIT, OR OBTAIN A LICENSE BEFORE LISTING A PROPERTY OR ACCEPTING GUESTS.  CERTAIN TYPES OF SHORT-TERM BOOKINGS MAY BE PROHIBITED ALTOGETHER.

10.    Airbnb also maintains a "Responsible Hosting" section on the Airbnb website.  Airbnb provides a variety of general information for hosts about applicable laws and regulations that they should follow, including safety guidelines and business regulations.  A true and correct copy of the "Responsible Hosting" webpage, available at https://www.airbnb.com/help/responsible-hosting, is attached hereto as Exhibit B.

11.    Airbnb has a specific page from its "Responsible Hosting" website for Santa Monica that provides information about Santa Monica's laws and regulations.  The page references "Santa Monica's Home-Sharing Ordinance," and provides a link to the City's website for more information.  It states that "it's important for you to understand the laws in your city," and that under the Ordinance, "Hosted rentals," where "at least one of the primary residents lives on site throughout the visitor's stay," are "allowed for 30 days or less," and that the law requires a "business license, taxes and compliance with other health and safety laws."  The page notes that hosts "may include your business license number on your listing" in the "'Other Things to Note' field, type in your permit number following the acceptable permit format for Santa Monica.  The format is: xxxxxx.  An example would be: 123456."  The page further states that "Un-hosted rentals (Santa Monica calls vacation rentals)

are prohibited unless they are 30 days and longer.  If a primary resident is not living on site throughout the stay, Santa Monica's law prohibits short-term rental."

12. A true and correct copy of the Airbnb webpage entitled "Santa Monica, CA," available at https://www.airbnb.com/help/article/908/santa-monica--ca, is attached hereto as Exhibit C.

13. As part of its Community Compact, Airbnb is committed to helping provide solutions tailored to the needs of cities.  For example, Airbnb discretionarily removes listings from its website that Airbnb believes may be offered by hosts with multiple entire home listings or are offered by unwelcome commercial operators.  If Airbnb is alerted to shared spaces or private rooms that appear to be operated by unwelcome commercial operators or that do not reflect the community vision, it generally will remove such listings.  A true and correct copy of the Airbnb webpage describing its Community Compact is attached hereto as Exhibit D, available at https://www.airbnbaction.com/wp-content/uploads/2015/11/Airbnb-Community-Compact.pdf.

**The Ordinance**

14. I understand that Ordinance No. 2484 (the "Ordinance") imposes criminal and civil liability on hosting platforms for publishing a third-party listing for a short-term rental in the City of Santa Monica (the "City") if that rental does not comply with the Ordinance.  I understand that to comply with the Ordinance, all short-term rentals in the City must be "hosted" (where at least "one of the dwelling unit's primary residents lives on-site" during the rental), must have a valid business license from the City of Santa Monica, and must comply with all other law applicable to short-term rentals, including all health, safety, building, fire protection, and rent control laws.  I understand that residential rental for 30 days or less that does not meet these requirements does not constitute lawful "Home-Sharing" under the Ordinance and instead is an unlawful "Vacation Rental."

15. I understand that failure to comply with the Ordinance may result in hosting platforms facing civil penalties of up to $250 per violation and criminal penalties of up to $500 and/or up to six months imprisonment per violation, as well as administrative fines and penalties.

16. To comply with the Ordinance, Airbnb could not allow any listings in the City to be posted until it had confirmed that the rentals in the listings have a City-issued business license, are "hosted," and do not otherwise violate any other law or regulation of the City. Thus, the Ordinance requires Airbnb to confirm that a short-term rental in fact has a permanent resident on site during the listing, and also, for example, has required guardrails on certain windows and smoke detectors, both of which I understand to be requirements of City law.

17. The Ordinance does not set forth any procedures for hosting platforms to achieve compliance with the Ordinance. Hosting platforms presumably would need to design their own procedures for achieving compliance with these provisions. For instance, with respect to the business-license provision, the Ordinance presumably requires a manual process of obtaining license information from hosts on the hosting platform, or if they do not provide it, some other source, and then verifying that information with the City, prior to publishing the listing. Compliance with the Ordinance is rendered more complicated by the fact that the Ordinance allows certain short-term rentals that comply with various requirements imposed by the Ordinance, while banning others.

18. Airbnb also would need to inspect physically every property listed on its website in Santa Monica to determine whether the rental complies with all applicable City laws and to confirm that a permanent resident is on site for the duration of the rental period.

19. Compliance with these provisions would be extremely burdensome, if not impossible. For example, Airbnb does not have the personnel or expertise to inspect properties physically to determine whether they comply with City law and

are occupied by hosts. Even if compliance were theoretically feasible—which likely would require a dedicated team of employees devoted fulltime to complying with all of these requirements—establishing, testing and implementing processes to check all listings in the City likely would take a significant period of time and resources.

20. In addition, even assuming that Airbnb would be capable of verifying that a listing is permitted, hosted, and otherwise is in compliance with all aspects of City law, this would introduce significant delays from when hosts post listings to when those listings in fact appear on the website, and would require Airbnb to fundamentally redesign how the Airbnb website operates for hosts creating and managing their listings.

21. There are at present approximately 1,128 rentals located in Santa Monica listed on Airbnb. In the normal course of business, hosts add new listings, change the status of listings and deactivate listings continually. Accordingly, the burden to Airbnb of complying with the Ordinance's requirements is not solely measured by the static number of listings at a single point in time.

22. Complying with the Ordinance would be highly disruptive to the operation of the Airbnb website. Given the extremely burdensome measures needed to comply with the Ordinance, and to avoid the continued risk of the significant criminal and civil penalties discussed above, Airbnb very likely would need to remove all Santa Monica listings from its website, and prevent further postings from being added. This would include the removal of listings that may otherwise be in compliance with City law as Airbnb cannot confirm that the rental for the listing has a valid license and otherwise complies with all aspects of City law.

23. The bar on future Santa Monica listings and removal of all current Santa Monica listings from the Airbnb website, including those that otherwise may comply with the law, would cause a significant disruption to Airbnb's operations and would substantially injure the substantial business goodwill that Airbnb has generated from the hosts and guests who use its platform in Santa Monica. Airbnb

has cultivated a significant amount of trust and goodwill with consumers who have come to rely on its platform for their listings and lodging accommodations. If Airbnb is forced to bar and remove all or a substantial number of Santa Monica listings, that trust and goodwill will likely be irreparably lost, and such customers may never return to Airbnb even if the Ordinance is ultimately ruled invalid.

24. I understand that the Ordinance and the rules issued by the City to enforce the Ordinance also require Airbnb to disclose on a quarterly basis to the City nonpublic information about each listing within Santa Monica, including its address, the persons responsible for the listing, the length of each stay, and the price paid for each stay. In order to avoid penalties, Airbnb would have to reveal confidential information, including information supplied by hosts and guests and information about Airbnb's business operations. Airbnb is one of a number of competitors that offer platforms for potential hosts to list properties for rent. As a competitor in this marketplace, Airbnb takes various measures to guard confidential business information that is important for Airbnb's ability to maintain its business success.

25. Airbnb also takes various steps to protect the privacy of its hosts and guests. For example, although both hosts and guests complete profiles in order to participate on the site, personal information, including contact details and even last names, is not revealed until a booking has been completed. Furthermore, Airbnb collects information about hosts and guests in order to verify their actual identities, such as driver's licenses, but does not reveal that to other users of the site. These measures indicate the importance of privacy to the users of the Airbnb platform. A primary advantage of the current system implemented on the Airbnb platform is that it provides both security and privacy for hosts and guests.

26. If Airbnb was forced to regularly disclose the type of confidential information required by the Ordinance, including not only users' identities but also the hosts responsible for each listing, the length of each stay, and the price paid for

each stay, this could strongly discourage both hosts and guests from using the platform.

### The City's Past Enforcement Efforts and Airbnb's Responses

27. Since the Ordinance was enacted, the City has sent Airbnb several letters regarding purported violations of the Ordinance with attached citations, and Airbnb has responded to those letters and citations. I have reviewed the letters and citations from the City received by Airbnb, and Airbnb's responses to those letters and citations.

28. Attached hereto as Exhibit E is a true and correct copy of a letter received by Airbnb from the Code Enforcement Division of the Santa Monica Planning and Community Development Department, dated September 22, 2015.

29. Attached hereto as Exhibit F is a true and correct copy of a letter Airbnb sent to Sharon Guidry, Code Enforcement Manager at the Planning and Community Development Department for the City of Santa Monica, on or about October 22, 2015, which included checks for the payment of the fines listed in the City's September 22, 2015 letter.

30. Attached hereto as Exhibit G is a true and correct copy of a letter received by Airbnb from the Code Enforcement Division of the City of Santa Monica Planning and Community Development Department, dated October 29, 2015.

31. Attached hereto as Exhibit H is a true and correct copy of a letter Airbnb sent to Sharon Guidry, Code Enforcement Manager at the Planning and Community Development Department for the City of Santa Monica, on or about November 25, 2015, which included checks for the payment of the fines listed in the City's October 29, 2015 letter.

32. Attached hereto as Exhibit I is a true and correct copy of a letter received by Airbnb from the Code Enforcement Division of the City of Santa

1  Monica Planning and Community Development Department, dated December 16,
2  2015, and attaching Citation Number 15CIT-709.
3      33.    Attached hereto as Exhibit J is a true and correct copy of a letter
4  received by Airbnb from the Code Enforcement Division of the City of Santa
5  Monica Planning and Community Development Department, dated December 16,
6  2015, and attaching Citation Number 15CIT-711.
7      34.    Attached hereto as Exhibit K is a true and correct copy of a letter
8  Airbnb sent to Sharon Guidry, Code Enforcement Manager at the Planning and
9  Community Development Department for the City of Santa Monica, on or about
10 January 15, 2016, which included checks for the payment of the citations listed in
11 the City's December 16, 2015 letters.
12 //
13 //
14 //
15 //
16 //
17 //
18 //
19 //
20 //
21 //
22 //
23 //
24 //
25 //
26 //
27 //
28 //

-9-
DECLARATION OF DAVID OWEN IN SUPPORT OF PLAINTIFFS' MOT. FOR PRELIM. INJ.

1
2  I declare under penalty of perjury under the laws of the United States that the
3  foregoing is true and correct.
4
5  Executed this ___1st___ day of September, 2016, in San Francisco, California.
6
7  By: _____
8
9  DAVID OWEN