1 | JONATHAN H. BLAVIN (State Bar No. 230269)
jonathan.blavin@mto.com
2 | JOSHUA PATASHNIK (State Bar No. 295120)
josh.patashnik@mto.com
3 | MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
4 | San Francisco, CA  94105-4000
Telephone:   (415) 512-4000
5 | Facsimile:   (415) 512-4077

6 | JOSEPH W. COTCHETT (SBN 36324)
jcotchett@cpmlegal.com
7 | ALEXANDRA P. SUMMER (SBN 266485)
asummer@cpmlegal.com
8 | COTCHETT, PITRE & McCARTHY, LLP
2716 Ocean Park Blvd., Suite 3088
9 | Santa Monica, CA  90405
Telephone:   (310) 392-2008
10 | Facsimile:   (310) 392-0111

11 | Attorneys for Plaintiff Airbnb, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| AIRBNB, INC., | Case No. 2:16-cv-6645-ODW-AFM |
|---|---|
| Plaintiff, | **FIRST AMENDED COMPLAINT OF AIRBNB, INC. FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| vs. | |
| CITY OF SANTA MONICA, | |
| Defendant. | |

FIRST AMENDED COMPLAINT OF AIRBNB, INC.

Plaintiff Airbnb, Inc. ("Airbnb") brings this action to enjoin and declare unlawful the enforcement against Airbnb by the City of Santa Monica ("Santa Monica" or the "City") of its amended "Home-Sharing" Ordinance No. 2535 (the "Ordinance"), set forth in Chapter 6.20 of the Santa Monica Municipal Code.  This action is brought pursuant to 42 U.S.C. § 1983, 18 U.S.C. § 2707, California Public Resources Code § 30803(a), the Court's equitable powers, and the Declaratory Judgment Act, 28 U.S.C. § 2201.[1]  Airbnb alleges as follows:

## INTRODUCTION

1.     This is a case about a city adopting unlawful and protectionist local regulations to constrain a burgeoning industry—short-term home rentals over the Internet.  The City of Santa Monica ("City") has illegally enacted an Ordinance banning vacation rentals and punishing home-sharing websites, like that operated by Plaintiff Airbnb, Inc. ("Airbnb"), that publish third-party listings advertising those and other purportedly unlawful short-term rentals.  The Ordinance seeks to force home-sharing platforms to police listings on their websites in order to further the City's enforcement policies.  It also would require platforms to turn over confidential information about users to the City without legal process.  The Ordinance plainly violates the California Coastal Act (Cal. Pub. Res. Code § 30000 *et seq.*), the Communications Decency Act (47 U.S.C. § 230), the Stored Communications Act (18 U.S.C. §§ 2701 *et seq.*), and the First, Fourth and Fourteenth Amendments of the U.S. Constitution.

2.     Santa Monica, set along miles of picturesque California coastline with great expanses of inviting beaches, a backdrop of the striking Santa Monica

---

[1] This action is both an as-applied and a facial challenge against the Ordinance.  It is an as-applied challenge in that it seeks only to prohibit the City from enforcing certain provisions of the Ordinance against Airbnb; and it is a facial challenge in that certain provisions, on their face, violate the law and cannot be enforced against any hosting platform in any set of factual circumstances.

mountains, and an enviable climate, has been uniquely blessed by Mother Nature.  Befitting this natural bounty, the city's landscape is dotted with appealing manmade additions:  Palisades Park, the Third Street Promenade, the Santa Monica Stairs, Tongva Park, and the iconic Pier, to name a few.

3.      But all the things that make Santa Monica unique and attractive also can cause some of those lucky enough to call it home to be proprietary, exclusive, and protectionist, with the City's policies historically reflecting an anti-growth mindset.

4.      This has contributed to Santa Monica's high housing prices and rents—and steep prices for hotel rooms.  According to hotel industry research, Santa Monica hotel occupancy in recent years has "exceed[ed] historical levels" while the number of available hotel rooms remained "generally flat," resulting in significant revenue per room increases—e.g., 9% in 2014—and an average cost per hotel room of $315.[2]

5.      Such constraints laid the groundwork for the growth of modern home-sharing—a practice that has existed for centuries but which has advanced in the Internet era.  Home-sharing platforms such as Airbnb now allow hosts and guests to locate each other online, uniting the increasing demand for overnight accommodation in places like Santa Monica (and typically at a lower cost than a hotel and with the convenience and amenities of a home) with residents' needs to help make ends meet.  Indeed, among Airbnb hosts in Los Angeles, 13% have said the income earned from hosting prevented them from losing their homes to foreclosure, and another 10% said their hosting income saved them from eviction.[3]

---

[2] See Ester Wan, *Santa Monica Hotel Market Update*, at 4, 6, HVS Los Angeles (Nov. 12, 2015), https://www.hotelnewsresource.com/pdf15/HVS1112151.pdf (last visited Dec. 13, 2017).

[3] See Airbnb, "Airbnb's Economic Impact in Los Angeles in 2016," at 2, https://www.airbnbcitizen.com/wp-content/uploads/sites/14/2017/03/airbnb-la-economic-impact-2016.pdf (last visited Dec. 13, 2017).

FIRST AMENDED COMPLAINT OF AIRBNB, INC.

6.     The expansion of home-sharing has allowed for a broader group of Californians to have access to the entirety of California's coast, not just in Santa Monica.  The 1,100 miles of California coastline is an invaluable public resource, and state law mandates that access to that publicly-owned land be expansive and available for all of California's residents, not just those with sufficient resources to live near the ocean.

7.     Studies regarding coastal access have shown that a lack of affordable overnight accommodations prevents many Californians from experiencing the coast.[4]  And recent surveys have shown that short-term rentals through Airbnb's platform are a top option for coastal visitors.[5]

8.     While beneficial for Santa Monica visitors and many residents, home-sharing also poses a competitive threat to the hotel industry.  One hotel industry executive has told investors that home-sharing platforms like Airbnb restrict the industry's "ability to price at what maybe the customer would describe as sort of gouging rates."[6]  Airbnb's presence in Santa Monica, by providing less expensive alternatives to hotels, hindered hotels' ability to hike their rates.[7]

9.     Against this backdrop, Santa Monica—under pressure from the politically powerful hotel industry—passed an ordinance in 2015 (and amendments

---

[4] *See* Jon Christensen and Philip King, *Access for All: A New Generation's Challenges on the California Coast*, at 3-4, https://www.ioes.ucla.edu/wp-content/uploads/UCLA-Coastal-Access-Policy-Report.pdf (last visited Dec. 13, 2017).

[5] *See* Probolsky Research, *Coastal Conservancy Statewide Survey*, at 9 (Oct. 4, 2017), http://scc.ca.gov/files/2017/10/SCC_CoastalAccessWebinar_Probolsky.pdf (last visited Dec. 13, 2017).

[6] *See* Elizabeth Dwoskin, *Hotel CEO Openly Celebrates Higher Prices After Anti-Airbnb Law Passes*, Wash. Post (Oct. 26, 2016), https://www.washingtonpost.com/news/the-switch/wp/2016/10/26/hotel-executive-openly-celebrates-higher-prices-after-anti-airbnb-law-passes/?utm_term=.6b159c732a9a (last visited Dec. 13, 2017).

[7] *See* Hugo Martin, *Airbnb and Other Home-Sharing Businesses Have Hotels Worried*, L.A. Times (Mar. 17, 2016), http://www.latimes.com/business/la-fi-hotels-airbnb-20160317-story.html (last visited Dec. 13, 2017).

3

1  to that ordinance in 2017) to ban vacation rentals and to impose both civil and

2  criminal liability on Internet platforms such as Airbnb for publishing third-party

3  listings advertising hosted short-term rentals.  Santa Monica did so in disregard of

4  applicable federal and state laws, and the Ordinance restricts coastal access for

5  Californians.

6  **The City Intentionally Ignored and Violated the California Coastal Act**

7          10.     Santa Monica passed the Ordinance with willful disregard for the

8  California Coastal Commission and the California Coastal Act.  The Coastal

9  Commission is charged with protecting California's coast in terms of environmental

10  and geographic preservation, as well as ensuring public access, including the

11  provision of lower-cost visitor accommodations.  The Coastal Act has preemptive

12  power over local laws conflicting with its objectives.

13          11.     The Ordinance conflicts with and violates the Coastal Act

14  because it is designed to severely restrict the supply of lower-cost vacation rentals in

15  Santa Monica and is thus incompatible with the Act's policies to "maximize public

16  access" and "maximize public recreational opportunities" at the coast for the public,

17  as well as the Act's "protect[ion]" of "[l]ower cost visitor and recreational

18  facilities."  Cal. Pub. Res. Code §§ 30001.5(c), 30213; *see generally* Cal. Pub. Res.

19  Code §§ 30000 *et seq.*  By limiting the supply of lower-cost home-sharing

20  opportunities, the Ordinance will make it significantly harder for low- and

21  moderate-income Californians to access the coast in Santa Monica—a result that

22  directly contravenes both the text and policy of the Coastal Act.

23          12.     The City failed to abide by its obligation to submit the Ordinance

24  to the Coastal Commission for its review and approval before the Ordinance could

25  take effect.  For cities like Santa Monica with a Local Coastal Program (LCP) or

26  Land Use Plan (LUP) that has been certified by the Coastal Commission, any

27  amendment to the LCP or LUP must be submitted to the Coastal Commission for

28

4

approval before taking effect.  *See* Cal. Pub. Res. Code § 30108.6 (defining LCP); § 30514 (discussing LCP amendments).  The Ordinance constitutes an amendment to Santa Monica's LUP.  In violation of the Coastal Act, the City did not submit any amendment to the Coastal Commission for approval.

13.    The City was required to obtain a Coastal Development Permit ("CDP") before enacting, implementing, or enforcing the Ordinance, because the Ordinance constitutes a "change in the density or intensity of use of land," and a "change in the intensity of use of water, or access thereto."  Cal. Pub. Res. Code §§ 30106, 30600(a).  The City failed to obtain a CDP prior to enacting or enforcing the Ordinance, so Santa Monica's conduct in enacting and enforcing the Ordinance is unpermitted development, in violation of the Coastal Act.

14.    The Coastal Commission has repeatedly concluded that vacation rental bans like Santa Monica's violate the Coastal Act.  As the Coastal Commission emphasized in a December 6, 2016 letter to various municipal planning departments, including Santa Monica, vacation rental bans are "not … consistent with the Coastal Act" because they "unduly limit public recreational access opportunities."[8]  Thus, when municipalities have submitted to the Coastal Commission for its review short-term rental restrictions similar to Santa Monica's, the Coastal Commission has declined to approve them.[9]

---

[8] Letter from Cal. Coastal Comm'n to Coastal Planning/Community Development Directors, at 2 (Dec. 6, 2016), https://documents.coastal.ca.gov/assets/la/Short_Term_Vacation_Rental_to_Coastal_Planning_&_Devt_Directors_120616.pdf (last visited Dec. 13, 2017).

[9] Letter from Karl Schwing, Deputy Director, et al. to Commissioners and Interested Persons re: Major Amendment Request No. 1-16 to the City of Laguna Beach Certified Local Coastal Program (Dec. 1, 2017), https://documents.coastal.ca.gov/reports/2017/12/th19b/th19b-12-2017-report.pdf (last visited Dec. 13, 2017).

15.     The City was aware of the Coastal Commission's position when it passed the original and amended ordinances, and intentionally refused to comply with the Coastal Act knowing its conduct was contrary to the statute.

16.     Because the Ordinance violates the Coastal Act and the City failed to follow the procedures mandated by the Act before enacting the Ordinance, the Ordinance is invalid as applied in the portion of the City lying within the coastal zone.  This Court should reject the City's effort to thwart the protections of applicable law and preliminarily and permanently enjoin enforcement of the Ordinance within the coastal zone unless and until the City obtains approval for an LUP amendment or receives a CDP allowing implementation and enforcement of the Ordinance.

**The City Ignored Applicable Federal Laws and the U.S. Constitution**

17.      Santa Monica also passed the Ordinance without regard to conflicting and preemptive federal laws and the U.S. Constitution.

18.     Section 230 of the Communications Decency Act ("CDA"), 47 U.S.C. § 230, is a landmark law in which Congress sought to protect and nurture the Internet as a forum for communication, expression, and e-commerce.  It prohibits "treat[ing]" websites that host or distribute third-party content, like Airbnb, "as the publisher or speaker of any information provided by another information content provider," immunizing them from liability under any "inconsistent" state or local law.  47 U.S.C. § 230(c)(1), (e)(3).  Congress enacted the law to "encourage the unfettered and unregulated development of free speech on the Internet, and to promote the development of e-commerce," while "keep[ing] government interference in the medium to a minimum."  *Batzel v. Smith*, 333 F.3d 1018, 1027 (9th Cir. 2003).

19.     Airbnb is a website that is a realization of Congress's goal.  Airbnb operates an online platform that allows hosts and guests to find each other

FIRST AMENDED COMPLAINT OF AIRBNB, INC.

and arrange their own transactions for overnight accommodation.  Hosts alone control the relevant content of their listings and publish them; hosts and guests alone, not Airbnb, decide whether and on what terms to enter into transactions.  This brings Airbnb squarely within the protections of the CDA.

20.   The Ordinance violates the CDA by (a) regulating Airbnb's completion of booking transactions, which derive from and are inextricably intertwined with Airbnb's role as a publisher of third-party content; (b) requiring Airbnb to monitor, review, and verify content associated with third-party rental advertisements; and (c) directly regulating the structure and operation of Airbnb's website.  By imposing these obligations and duties, and criminal and civil liability on Airbnb for failure to comply, the Ordinance impermissibly treats Airbnb as the publisher or speaker of third-party content, and it is therefore preempted by the CDA.

21.   In addition to the CDA, the Ordinance violates a host of other federal laws as well.  It violates the First and Fourteenth Amendments of the U.S. Constitution because it is an impermissible content-based regulation of speech and imposes liability without proof of *mens rea* or scienter.  The Ordinance also violates the Stored Communications Act, 18 U.S.C. §§ 2701 *et seq.* (the "SCA"), and the Fourth Amendment by requiring disclosure to the City of certain customer information without any legal process or pre-compliance review.

## PARTIES

22.   Plaintiff Airbnb, Inc. is a corporation organized and existing under the laws of the state of Delaware, with its principal place of business in San Francisco, California.  It maintains a website that provides an online marketplace for people to list, explore, and book both short-term and long-term housing accommodations.

23. Defendant City of Santa Monica is an incorporated municipality located in Los Angeles County, California.

## JURISDICTION AND VENUE

24. This Court has jurisdiction of this action under 28 U.S.C. § 1331 and 42 U.S.C. § 1983 because Airbnb alleges an imminent violation of its rights under the Constitution and laws of the United States. This Court has jurisdiction of Airbnb's Coastal Act claim under 28 U.S.C. § 1367 because the claim arises from the same set of facts as Airbnb's federal claims and because the claim is so related to Airbnb's federal claims that it forms part of the same case or controversy under Article III of the U.S. Constitution.

25. The Court may declare the legal rights and obligations of the parties in this action pursuant to 28 U.S.C. § 2201 because the action presents an actual controversy within the Court's jurisdiction.

26. Venue is proper under 28 U.S.C. § 1391 because the Defendant is located and resides in this judicial district, and because a substantial part of the events giving rise to Airbnb's claims for relief occurred in this judicial district.

## FACTUAL ALLEGATIONS

**Airbnb Is a Leading Internet Platform for Responsible Home-Sharing**

27. Founded in 2008, Airbnb provides an Internet platform through which persons desiring to book accommodations ("guests"), and persons listing unique accommodations available for rental ("hosts"), can locate each other and enter into direct agreements to reserve and book travel accommodations on a short- and long-term basis.

28. Airbnb's Internet website, located at www.airbnb.com, provides a means by which interested parties can choose to list their accommodations, a means by which hosts and guests can locate and connect with each other, a means for them to communicate and message one another directly on the platform and

8

determine the material terms for their bookings,[10] and also enables the provision of payment processing services to permit hosts to receive payments electronically.

29.     Airbnb does not charge hosts any upfront fees at the time they post their listings.  Not charging hosts an upfront fee for listing their rentals removes barriers to entry and makes it more likely for hosts to post their listings on Airbnb.  Instead, in consideration for use of the platform services, including its publication services, Airbnb receives a service fee from both the guest and the host, which is determined as a percentage of the accommodation fee set solely by the host.  Airbnb ultimately is compensated for and able to provide its services, including its publishing and listing services, through the receipt of such service fees, which help cover the costs associated with running Airbnb's website and services.

30.     Airbnb has no possessory interest in any of the property or accommodations that third-party hosts may list on the Internet platform.  Airbnb therefore is not a proprietor, owner, or operator of any accommodation offered by hosts on the Internet platform.  As Airbnb's Terms of Service state, Airbnb "does not own, create, sell, resell, provide, control, manage, offer, deliver, or supply any Listings or Host Services."[11]

31.     Hosts, and not Airbnb, decide whether to list their properties and with whom and when to transact, provide the descriptions of their rentals, set their own lengths of stay, and determine their prices.  The Terms of Service state that hosts "alone are responsible for their Listings and Host Services."[12]  Hosts also input the minimum and/or maximum days of stay for a particular rental.  Airbnb does not control the content that is created by hosts and is not responsible for it.

---

[10] Airbnb also provides electronic storage of those communications on its platform.

[11] Airbnb, "Terms of Service," § 1.2, https://www.airbnb.com/terms (last visited Dec. 13, 2017).

[12] *Id.*

FIRST AMENDED COMPLAINT OF AIRBNB, INC.

1    32.    As a general matter, Airbnb does not review the hundreds of

2  thousands of third-party listings before the listings appear on Airbnb's marketplace.

3  Rather, the process for listing properties is automated, and once the host provides

4  listing information, the listing appears on the Airbnb marketplace almost

5  immediately.

6   **Hosts, Municipalities, and the Public Benefit Substantially from Using Airbnb**

7    33.    Hosts who post listings on Airbnb most often are everyday

8  people using the powerful tools afforded by the Internet to engage in home-sharing

9  to supplement their incomes.

10    34.    The overwhelming majority of Airbnb hosts in Santa Monica, for

11  example, are individuals who have only one listing on the platform.  At present,

12  there are approximately 1,400 listings for rentals in Santa Monica on Airbnb's

13  marketplace.  Among Airbnb hosts in Santa Monica, 82% have only one listing on

14  the marketplace.

15    35.    Among Airbnb hosts in Los Angeles, 13% have said the income

16  earned from hosting prevented them from losing their homes to foreclosure, and

17  another 10% of hosts said their income saved them from eviction.[13]  At that rate,

18  nearly 3,000 Los Angeles hosts have avoided foreclosure or eviction due to the

19  supplemental income they make from hosting on Airbnb.  The typical Los Angeles

20  host earned an additional $7,200 per year from hosting on Airbnb.

21    36.    In Los Angeles in 2016, Airbnb generated more than $1.1 billion

22  in economic activity.[14]  Airbnb also has collected and remitted more than $42

23  million in taxes to the City of Los Angeles over the past year alone, and stands to

---

[13] *See* Airbnb, "Airbnb's Economic Impact in Los Angeles in 2016," https://www.airbnbcitizen.com/wp-content/uploads/sites/14/2017/03/airbnb-la-economic-impact-2016.pdf (last visited Dec. 13, 2017).

[14] *Id.*

1  collect and remit $2 billion or more in taxes over the next decade to the 50 largest
2  U.S. cities.

3          37.     Airbnb listings in Santa Monica also provide an economical and
4  convenient way for many travelers to experience the Santa Monica coast.  Many of
5  Airbnb's listings are within Santa Monica's "Coastal zone," which "extend[s] inland
6  generally 1,000 yards from the mean high tide line of the sea."  Cal. Pub. Res. Code
7  § 30103(a).  Over the past two years, approximately 30% of Airbnb listings within
8  Santa Monica have been located in the coastal zone.  Since passage of the
9  Ordinance, numerous Airbnb hosts removed their listings from the Airbnb website.
10  With the removal of such short-term rentals from the market, one can also assume a
11  negative impact on the cost of accommodations and the number of people able to
12  access and use California's coast.

13                    **Airbnb Is Committed to Responsible Home-Sharing**

14          38.     As part of the Airbnb Community Compact, the company is
15  committed to helping promote responsible home-sharing to make cities stronger.[15]
16  For example, Airbnb discretionarily removes listings that it believes may be offered
17  by hosts with multiple "entire home" listings or by unwelcome commercial
18  operators.

19          39.     Airbnb also advises its hosts and guests to be aware of and
20  comply with local laws in listing and renting units listed on Airbnb.  The Airbnb
21  Terms of Service state that "Hosts alone are responsible for identifying,
22  understanding, and complying with all laws, rules and regulations that apply to their
23  Listings and Host Services."[16]

24

25  _____

26  [15] Airbnb, "Community Compact," at 2, https://www.airbnbaction.com/wp-
    content/uploads/2015/11/Airbnb-Community-Compact.pdf (last visited Dec. 13, 2017).
27
    [16] Airbnb, "Terms of Service," § 1.2, https://www.airbnb.com/terms (last visited Dec. 13, 2017).
28

FIRST AMENDED COMPLAINT OF AIRBNB, INC.

40.     Airbnb also maintains a "Responsible Hosting" section on the Airbnb website.  Airbnb provides a variety of general information for hosts about applicable laws and regulations that they should follow, including safety guidelines and property regulations.[17]

**Airbnb Protects Private Information**

41.     Airbnb takes very seriously the privacy of its hosts and guests, and takes various measures to protect their privacy.  For example, although both hosts and guests complete profiles in order to participate on the site, personal information, including contact details and even last names, is not revealed until a booking has been completed.

42.     Information and data relating to Airbnb platform users also is confidential information about Airbnb's business operations.  Airbnb takes various measures to guard such confidential business information from public disclosure, which is important for Airbnb's ability to maintain its business success.

**Santa Monica's Regulations to Stymie Home-Sharing**

43.     The City's regulation of short-term rentals began in May 2015, when the Santa Monica City Council adopted Ordinance 2484CCS (the "Original Ordinance"), which added Chapter 6.20 to the Santa Monica Municipal Code.  The Original Ordinance became effective on June 12, 2015.[18]

44.     Both the Original Ordinance and the subsequent amendments were supported by hotel-industry groups.  At the City Council meetings for both,

---

[17] *See* Airbnb, "Responsible Hosting in the United States," https://www.airbnb.com/help/article/1376/responsible-hosting-in-the-united-states (last visited Dec. 13, 2017).

[18] A report from the City's Director of Planning and Community Development to the Mayor and City Council explained the rationale for the Original Ordinance.  Santa Monica City Council Report re: Vacation Rentals and Home-Sharing Program Amendments (Apr. 28, 2015), https://www.smgov.net/departments/council/agendas/2015/20150428/s2015042807-A.pdf (last visited Dec. 13, 2017).

1   hotel-worker representatives spoke in favor of restricting short-term rentals.

2   Further, the restrictions were passed after a "political action committee … largely

3   backed by hotel owners and prospective hotel builders" spent more on "the council

4   race" than "any other outside spenders."[19]

5          45.    Under the terms of the Original Ordinance, "Vacation Rentals"

6   are prohibited in Santa Monica.  "Vacation Rental[s]" are defined as the "[r]ental of

7   any dwelling unit, in whole or in part," to "any person(s) for exclusive transient use

8   of thirty consecutive days or less, whereby the unit is only approved for permanent

9   residential occupancy and not approved for transient occupancy or home-sharing as

10  authorized by this Chapter."  S.M. Mun. Code §§ 6.20.010(f); 6.20.020(a).  The law

11  permits, under certain conditions, "Home-Sharing," which is defined as "[a]n

12  activity whereby the residents host visitors in their homes, for compensation, for

13  periods of thirty consecutive days or less, while at least one of the dwelling unit's

14  primary residents lives on-site, in the dwelling unit, throughout the visitors' stay."

15  *Id.* §§ 6.20.010(a); 6.20.020(a).[20]

16         46.    In short, the Original Ordinance outlaws short-term rentals of an

17  entire unit when the host is not present, but allows rentals of a room or portion of a

18  property when the host remains on site throughout the stay.

19

20  _____

21  [19] David Mark Simpson, *More Than $1 Million Spent On Santa Monica Council Race*, Santa
    Monica Daily Press (Feb. 23, 2015), http://smdp.com/1-million-spent-santa-monica-council-
22  race/145789 (last visited Dec. 13, 2017).

23  [20] Home-sharing is permitted by the City provided that the host:  (1) "Obtains and maintains at all
    times a City business license authorizing home-sharing activity"; (2) "Operates the home-sharing
24  activity in compliance with all business license permit conditions"; (3) "Collects and remits
    Transient Occupancy Tax ('TOT'), in coordination with any hosting platform if utilized, to the
25  City and complies with all City TOT requirements as set forth in" other provisions of the Code;
    (4) "Takes responsibility for and actively prevents any nuisance activities that may take place as a
26  result of home-sharing activities"; (5) "Complies with all applicable laws, including all health,
    safety, building, fire protection, and rent control laws"; and (6) "Complies with [the Ordinance]."
27  S.M. Mun. Code  § 6.20.020(a).

28

47.     The Original Ordinance also requires the creation of a "registry" by the City listing "[a]ll hosts and their respective properties, authorized by the City for home-sharing purposes pursuant to [the Ordinance]." *Id.* § 6.20.020(b).

48.     The law further regulated "Hosting Platforms."  A Hosting Platform is defined as a "person[21] who participates in the home-sharing or vacation rental business by collecting or receiving a fee, directly or indirectly through an agent or intermediary, for conducting a booking transaction using any medium of facilitation." *Id.* § 6.20.010(c).

49.     Under the terms of the Original Ordinance, Hosting Platforms were prohibited from "undertak[ing], maintain[ing], authoriz[ing], aid[ing], facilitat[ing] or advertis[ing]" vacation rentals or home-sharing activity that did not comply with the City's regulations on home-sharing, including the requirements that hosts comply with all applicable laws, actively prevent nuisance activities, and maintain a business license.

50.     After passage of the Original Ordinance, the City began a "crackdown on short-term" rentals, described as "one of the most aggressive in the nation."[22]  As part of its enforcement efforts, the City issued Airbnb several citations stemming from alleged violations of the law.  Under protest, Airbnb paid the citation fines, which amounted to tens of thousands of dollars.  The City continued to escalate its enforcement efforts.

---

[21] The Ordinance defines "Person" to include "[a]ny natural person, joint venture, joint stock company, partnership, association, club, company, corporation, business trust, or organization of any kind."  S.M. Mun. Code § 6.20.010(e).

[22] Niki Cervantes, *Santa Monica Enforcers Crack Down on Short-Term Rentals*, Santa Monica Lookout (Mar. 22, 2016), http://www.surfsantamonica.com/ssm_site/the_lookout/news/News-2016/March-2016/03_22_2016_Santa_Monica_Enforcers_Crack_Down_on_Short-Term_Rentals.html (last visited Dec. 13, 2017).

**Santa Monica Amends the Ordinance in the Wake of Airbnb's Lawsuit**

51.     In September 2016, Airbnb sued the City challenging the validity of the Original Ordinance.  In response to the lawsuit, the City requested a stay of proceedings to consider the legality of the Original Ordinance.

52.     Confronted with the reality that its ordinance plainly violated and was thus preempted by Section 230 of the CDA, the City declined to defend the Original Ordinance.  Instead, in January 2017, the City Council adopted amendments to Chapter 6.20 to alter how it regulates Hosting Platforms (among other modifications).  Included in those amendments was a provision in which the City Council built a safety valve in recognition of the legal infirmities of the Ordinance:  it "will not apply if determined … to be in violation of, or preempted by" state or federal laws.  S.M. Mun. Code § 6.20.050(f).

53.     The amendments to Chapter 6.20 sought to alter platforms' duties.  The Ordinance now provides that "Hosting platforms shall not complete any booking transaction for any residential property or unit unless it is listed on the City's registry created under Section 6.20.020 subsection (b), at the time the hosting platform receives a fee for the booking transaction."  *Id.* § 6.20.050(c).  "Booking Transaction," in turn, is defined as "[a]ny reservation or payment service provided by a person who facilitates a homesharing or vacation rental transaction between a prospective transient user and a host."  *Id.* § 6.20.010(d).

54.     In short, the Ordinance prohibits Hosting Platforms from providing reservation or payment services for a fee for third-party rental listings that advertise properties that are not listed on the City's registry.[23]

---

[23] As a City Council staff report notes, under the Ordinance "Internet companies which do not charge for booking services, and act solely as publishers of advertisements for short term rentals would not be subject to the amended ordinance."  Santa Monica City Council Report re: Home-Sharing Program Amendments (Jan. 10, 2017), http://santamonicacityca.iqm2.com/Citizens/Detail_LegiFile.aspx?ID=2253 (last visited Dec. 13, 2017).

55.     The City claims such amendments will allow it to evade the CDA but accomplish the same goal of the Original Ordinance:  force platforms such as Airbnb to enforce the City's ban on short-term rentals against their users.

56.     Specifically, the City contends it has circumvented the protections of the CDA by revising its ordinance to target platforms' processing of transactions for third-party rental listings, rather than the publication of the listings themselves.  If accepted, this spurious distinction would gut the protection of the CDA in the realm of e-commerce, contrary to Congress's intent.  Any entity could circumvent the CDA by purporting to impose liability for websites' processing of payments and transactions between third parties—but, for online marketplaces, which include not only Airbnb but also sites like eBay, Amazon, and StubHub, the practical effect of such restrictions would be virtually identical to imposing liability for publishing listings.

57.     The Ordinance imposes other "responsibilities" on Hosting Platforms, including that, "subject to applicable laws,"[24]  they "shall disclose to the City on a regular basis each home-sharing and vacation rental listing located in the City, the names of the persons responsible for each such listing, the address of each

_____

[24] This provision was in the Original Ordinance and was challenged by Airbnb in its first complaint. Acknowledging the legal invalidity of this provision, the City Attorney sent a letter to Airbnb's counsel after the Ordinance passed, stating that it "interprets" the provision as "meaning that Airbnb and Homeaway.com would be in compliance with the Ordinance if they (1) voluntarily choose to disclose the information listed in subdivision (b), or (2) produce such information in response to a lawfully issued subpoena or warrant."  The City Attorney's attempt to run away from this provision is impermissible for several reasons, including because the Ordinance does not explicitly allow for the textual incorporation of an "interpretation" provided in a private letter to litigants; the City Attorney's interpretation of the provision cannot be squared with the plain text of the provision; and neither the Ordinance nor any established practice delegates to the City Attorney the authority to "interpret" or otherwise bind the City in its enforcement of this provision.

such listing, the length of stay for each such listing and the price paid for each stay." *Id.* § 6.20.050(b).[25]

58.     The Ordinance also states that "Hosting platforms shall not collect or receive a fee, directly or indirectly through an agent or intermediary, for facilitating or providing services ancillary to a vacation rental or unregistered home-share, including but not limited to insurance, concierge services, catering, restaurant bookings, tours, guide services, entertainment, cleaning, property management, or maintenance of the residential property or unit." *Id.* § 6.20.050(d).

59.     The Ordinance provides for criminal and administrative penalties for non-compliance.  Any person violating a provision of the Ordinance "shall be guilty" of an infraction, punishable by a fine not exceeding $250, or a misdemeanor, punishable by a fine not exceeding $500 and/or by imprisonment for a period not exceeding six months.  *Id.* § 6.20.100(a).  The Ordinance also provides for administrative fines and penalties.  *Id.* § 6.20.100(c).  The Ordinance contains no scienter, mental state, or *mens rea* requirement associated with these penalties.

**Santa Monica Enacted the Ordinance Knowing It Violates the Coastal Act**

60.     The California Coastal Act regulates all "development" in the coastal zone.  The Act requires local governments partially or wholly within the coastal zone, such as Santa Monica, to prepare Local Coastal Programs (LCPs), including a Land Use Plan (LUP).

61.     The Coastal Commission certified Santa Monica's current LUP in 1992.  The LUP states that "[l]ower cost visitor and recreational facilities shall be protected, encouraged, and where feasible, provided."  Santa Monica has not

---

[25] Separately, the Ordinance provides the City with subpoena power, allowing it to "issue and serve administrative subpoenas as necessary to obtain specific information regarding home-sharing and vacation rental listings located in the City, including but not limited to, the names of the persons responsible for each such listing, the address of each such listing, the length of stay for each such listing and the price paid for each stay, to determine whether the home-sharing and vacation rental listings comply with this Chapter."  S.M. Mun. Code § 6.20.100(e).

1   modified its LUP, although it receives grants from the Coastal Commission in order

2   to update the LUP.  The LUP does not directly address short-term rentals.

3          62.    The Coastal Commission for years has reviewed local short-term

4   rental restrictions appearing within LCPs, LCP amendments, or CDP applications,

5   and has jurisdiction over passage and implementation of these restrictions within the

6   coastal zone.

7          63.    Implementation and enforcement of the Ordinance constitutes

8   "development" under the Coastal Act because it changes the intensity of use of land

9   within the coastal zone and because it changes the intensity of use of the coast and

10  the public's access to the water in Santa Monica.  Preventing hosts from engaging in

11  home-sharing, preventing Airbnb from providing a platform to allow home-sharing,

12  and threatening fines, criminal penalties, and imprisonment all deter and reduce

13  public coastal access.

14         64.    Despite this, the City intentionally and knowingly did not seek

15  Coastal Commission approval for the Original Ordinance because it would not have

16  been provided.  After the City enacted the Original Ordinance, the Coastal

17  Commission, in December 2016, sent a letter to all coastal planning and community

18  development directors, including Santa Monica, stating that "vacation rental

19  regulation in the coastal zone **must** occur within the context of your local coastal

20  program (LCP) and/or be authorized pursuant to a coastal development permit

21  (CDP)."[26]   Nevertheless, the City passed both the Original Ordinance and the

22  amendments thereto without any effort to seek Coastal Commission approval, to

23  amend its LUP, or to obtain a CDP.

24

25

26  [26] Letter from Cal. Coastal Comm'n to Coastal Planning/Community Development Directors, at 2 (Dec. 6, 2016),

27  https://documents.coastal.ca.gov/assets/la/Short_Term_Vacation_Rental_to_Coastal_Planning_&_Devt_Directors_120616.pdf (last visited Dec. 13, 2017).

28

65.     The Coastal Act provides that a person, including a city, that "intentionally and knowingly performs or undertakes . . . development in violation of this division or inconsistent with any previously issued coastal development permit, may . . . be civilly liable in accordance with this subdivision."  Cal. Pub. Res. Code § 30820(b).   Civil liability can be ordered by a court "in an amount which shall not be less than one thousand dollars ($1,000), nor more than fifteen thousand dollars ($15,000), per day for each day in which the violation persists."

66.     Fines and penalties awarded under the Coastal Act are paid by the violator to the California Coastal Conservancy's "Violation Remediation Account."  *See id.* § 30823.  Thus, the penalties would directly benefit the people of California—they are not paid to Plaintiff or Plaintiff's counsel.

**Compliance with the Ordinance Would Impose Substantial Burdens on Airbnb and Harm the Public**

67.     The Ordinance does not set forth any procedures for how full compliance with the Ordinance's requirements could be achieved.  As it currently operates, Airbnb's platform allows a rental transaction to be completed immediately once the host and guest agree to it.  Requiring Airbnb to verify that a particular short-term rental property appears on the City's registry before allowing a transaction to go forward would require modifications to the Airbnb platform, introduce delays in the booking process, and require Airbnb to expend financial and technical resources.

68.     The Ordinance effectively requires one of two compliance options.

69.     First, Airbnb could monitor and screen listings to ensure that no booking transactions between hosts and guests occur for short-term rentals in Santa Monica that are not listed on the City's registry.  In theory, this could be done either prior to publishing each host's listing, or after publication but prior to processing the payment and transaction for the listing.  However, this latter option is not viable

from a business standpoint.  The Airbnb website would be highly confusing if it were populated by listings that guests could not actually book.  In addition, hosts and guests greatly value being able to enter into transactions immediately upon locating each other and agreeing on reservation terms.  This would no longer be possible if Airbnb had to screen listings prior to payment and transaction processing to ensure that the rental is listed on the City's registry.

70.     Thus, if Airbnb is to continue to process booking transactions for reservations in Santa Monica, Airbnb would have to monitor and screen listings prior to publication, and remove listings, to avoid the risk of the significant criminal and civil penalties discussed above.  In order to monitor and screen listings, Airbnb would be forced to alter the functionality of its website in a way that would render it less desirable for users.  A host seeking to create a listing would no longer be able to have it published immediately (because the listing would need to be screened), which would slow the process of creating a listing and make Airbnb's marketplace less desirable to both hosts and guests.

71.     This process would also cause a significant disruption to Airbnb's operations and impose substantial personnel and other costs on Airbnb (particularly if other cities replicated Santa Monica's regulatory model and enacted similar requirements).  This disruption would also injure the significant business goodwill that Airbnb has generated from the hosts and guests who have come to rely on its platform.

72.     As noted above, there are at present approximately 1,400 Airbnb listings located in Santa Monica.  In the normal course of business, hosts add new listings, change the status of listings and deactivate listings continually.  Accordingly, the burden to Airbnb of complying with the Ordinance's requirements is not solely measured by the static number of listings at a single point in time, but would be an ongoing and expanding burden.

FIRST AMENDED COMPLAINT OF AIRBNB, INC.

73. Second, Airbnb alternatively could stop providing payment and transaction processing services altogether in connection with all third-party listings in Santa Monica. Airbnb currently provides booking, calendaring, and payment processing services in connection with all of the listings on its platform. In order to stop providing those services, Airbnb would have to undertake a fundamental redesign of its business model, website, and platform. Further, no longer providing those services would harm users. Hosts and guests greatly value using Airbnb's services to facilitate payment and calendaring of rentals for listings published on Airbnb's site. In the modern world of e-commerce, users simply expect that they will be able to enter into transactions online for goods and services advertised on platforms like Airbnb. They do not expect to view listings they are unable to book. Were Airbnb no longer able to offer these services with respect to certain listings, many hosts and guests likely would be confused and angered by the change and might even stop using Airbnb's platform altogether.

74. Enforcement of the Ordinance against Airbnb will also cause it harm because Airbnb faces the threat of criminal and civil prosecution under a preempted law that violates its constitutional rights and which will substantially disrupt its business and erode customer goodwill.

75. Further, by restricting access to lower cost home-sharing and short-term rentals in the coastal zone, the public's ability to access and use public resources—specifically the beaches and ocean in Santa Monica—has been and will continue to be greatly reduced.

## CLAIMS FOR RELIEF

### CLAIM 1:  VIOLATION OF THE CALIFORNIA COASTAL ACT, CAL. PUB. RES. CODE §§ 30000 *ET SEQ.*, PURSUANT TO CAL. PUB. RES. CODE § 30803 AND 28 U.S.C. § 1367

76. Airbnb incorporates all of the preceding paragraphs as if fully set forth herein.

21

77.     Short-term rentals in Santa Monica's coastal zone provide members of the public with a more flexible, convenient, and affordable accommodation option than traditional hotels or motels.  By limiting the availability of short-term rentals by restricting home-sharing and banning vacation rentals, the City deprives the public of affordable accommodations near the coast and thus limits public access to Santa Monica's coastal zone.

78.     The Ordinance conflicts with the text and policies of the California Coastal Act, which requires "maximum access" and "recreational opportunities" for the public, Cal. Pub. Res. Code § 30210, and the "protect[ion]" of "[l]ower cost visitor and recreational facilities," *id.* § 30213.  As the Coastal Commission recently emphasized in a December 6, 2016 letter to various municipal planning departments, blanket vacation rental bans such as the City's are "not … consistent with the Coastal Act" because they "unduly limit public recreational access opportunities."  The Ordinance is invalid on that basis.

79.     The Ordinance also is invalid because the City was required to, but did not, submit it to the Coastal Commission for approval as an amendment to the City's Local Coastal Program (LCP) and Land Use Plan (LUP).  As the Coastal Commission explained in its December 6, 2016 letter, "vacation rental regulation in the coastal zone must occur within the context of" a municipality's LCP.  Once a city has a certified LCP Land Use Plan (as the City does), it must submit to the Coastal Commission for approval any amendment to the plan.  *See* Cal. Pub. Res. Code §§ 30512, 30514(a).  The Ordinance constitutes an "amendment" requiring Costal Commission approval because it is a "revision[]" to the certified Land Use Plan that "impose[s] further conditions, restriction, or limitations" on land use that "conflict with" the Act's policies favoring maximum access, recreational opportunities, and lower-cost visitor facilities.  Cal. Code Regs. tit. 14, § 13554(d)(3); *see* Cal. Pub. Res. Code §§ 30210, 30213.

FIRST AMENDED COMPLAINT OF AIRBNB, INC.

80.     In addition, the Ordinance is invalid because the Ordinance constitutes "development" under the Coastal Act such that the City was required to obtain a Coastal Development Permit (CDP) prior to enacting the Ordinance.  *See* Cal. Pub. Res. Code §§ 30500, 30600.  The City has not sought or obtained a CDP.

81.     The City is a person under the Coastal Act and is therefore required to obtain a CDP for any development in the Coastal Zone.  *See* Cal. Pub. Res. Code §§ 21066, 30600.  The City's passage, implementation, and enforcement of the Ordinance constitutes "development" because it has and will cause a substantial, direct, and quantifiable "change in the density or intensity of the use of land" and "intensity of use of water or access thereto" for potentially hundreds of thousands of visitors annually, especially Californians who do not live in Santa Monica, by limiting available accommodations in Santa Monica's coastal zone.  *See id.* § 30106.

82.     This is evidenced by the fact that a significant number of Airbnb hosts stopped using the Airbnb platform following the passage of the Ordinance. Further, since passage of the Ordinance the number of people able to access the water and actually visit and use the coast and beaches in Santa Monica has decreased.

83.     Accordingly, because the City intentionally refused to amend its LCP and intentionally failed to obtain a CDP prior to enacting and enforcing the Ordinance, the City knowingly and intentionally violated the Coastal Act, and the passage, implementation and enforcement of the Ordinance constitutes unpermitted development under the Coastal Act.

84.     Pursuant to Cal. Pub. Res. Code § 30803, Airbnb seeks declaratory and injunctive relief to restrain the City from enforcing the Ordinance in any manner within the portion of the City lying within the coastal zone.

**CLAIM 2:  DAILY FINES FOR VIOLATIONS OF THE COASTAL ACT**

85.     Airbnb incorporates all of the preceding paragraphs as if fully set forth herein.

86.     Pursuant to Cal. Pub. Res. Code § 30820(b), the Coastal Act allows for daily fines (in addition to statutory civil penalties) in an amount not to exceed $15,000.00 per day for each day a knowing and intentional violation persists.

87.     The City is aware that it is required to either receive approval from the Coastal Commission for an Amended Land Use Plan, or to apply for and receive a Coastal Development Permit in order to implement and enforce the Ordinance.

88.     The Coastal Commission has reviewed and denied (or conditionally approved) short-term rental bans similar to the one passed by the City. The City was aware that the Coastal Commission believed the Ordinance is inconsistent with the City's Land Use Plan and the Coastal Act.  The City also knew its conduct would change the intensity of use of land and water, as well as the public's access to the coast.

89.     The City's intentional and knowing violation has been ongoing from January 2017 to the present.

**CLAIM 3:  VIOLATION OF THE COMMUNICATIONS DECENCY ACT, 47 U.S.C. § 230, AND CLAIM FOR INJUNCTIVE RELIEF, PURSUANT TO 42 U.S.C. § 1983 AND THE COURT'S EQUITABLE POWERS**

90.     Airbnb incorporates all of the preceding paragraphs as if fully set forth herein.

91.     Airbnb is a provider of an interactive computer service within the meaning of 47 U.S.C. § 230, because it operates the interactive online platform Airbnb.com.  Airbnb provides information to multiple users by giving them computer access to a computer server within the meaning of 47 U.S.C. § 230(f)(2).

24

92.     The third-party hosts that create listings on Airbnb.com are persons responsible for the creation or development of information provided through Airbnb, within the meaning of 47 U.S.C. § 230(f)(3).

93.     The Ordinance violates and conflicts with 47 U.S.C. § 230, and Airbnb's rights thereunder, because it imposes duties and obligations on Airbnb that derive from Airbnb's status as a publisher or speaker of third-party content and treats Airbnb as the publisher or speaker of information provided by another information content provider, all in a manner prohibited by Section 230.

94.     First, the Ordinance imposes criminal and civil liability for Airbnb's completing "booking transaction[s]" for short-term rentals that do not appear on the City's short-term rental registry.  S.M. Mun. Code § 6.20.050(c).  The liability in this provision derives from Airbnb's publication of third-party rental advertisements on its website.

95.     Second, the Ordinance effectively requires Airbnb to monitor, review, and verify content associated with third-party rental advertisements. Specifically, Airbnb must verify whether the rental is listed on the City's registry at the time it receives a fee for completing a booking transaction.  The acts of monitoring and verifying content associated with a third-party listing is a protected editorial act, and this verification requirement derives from Airbnb's status as a publisher or speaker of third-party content, in violation of the CDA.

96.     Third, the Ordinance violates the CDA by directly regulating the structure and operation of Airbnb's website.  By requiring that Airbnb verify whether a listing is "listed on the City's registry" before completing a booking transaction, the Ordinance requires Airbnb to alter the structure and operation of its website either to perform verification prior to processing booking transactions or to cease processing booking transactions altogether.  Further, by regulating certain models of Hosting Platforms but not others, the Ordinance directly attacks the way

25

1   Airbnb has structured and operated its website in a manner that it has determined

2   allows third-party content to flourish on its site.

3       97.    Finally, the Ordinance violates the CDA to the extent the City

4   seeks to impose liability on platforms under Section 6.20.050(d) for "tours, guide

5   services, entertainment," or other services advertised and provided by third parties

6   utilizing Airbnb's platform.

7       98.    The Ordinance is a "State or local law that is inconsistent with"

8   Section 230, in violation of 47 U.S.C. § 230(e)(3).

9       99.    The enforcement of the Ordinance against Airbnb violates and is

10  preempted by 47 U.S.C. § 230.

11      100.   The Ordinance also interferes with or impedes the

12  accomplishment of the full purposes and objectives of federal law, violates the

13  Supremacy Clause, U.S. Const. art. VI, cl. 2, and is invalid and preempted.

14      101.   Pursuant to 42 U.S.C. § 1983 and the Court's equitable powers,

15  Airbnb seeks injunctive relief against the City to prevent its enforcement of the

16  Ordinance, which would conflict with and violate the CDA.

17  **CLAIM 4:  VIOLATION OF THE FIRST AND FOURTEENTH**
    **AMENDMENTS OF THE U.S. CONSTITUTION AND CLAIM FOR**
18  **INJUNCTIVE RELIEF, PURSUANT TO 42 U.S.C. § 1983 AND THE**
    **COURT'S EQUITABLE POWERS**
19
20  **(Content-Based Restrictions on Speech)**

21      102.   Airbnb incorporates all of the preceding paragraphs as if fully set

22  forth herein.

23      103.   The Ordinance is a content-based restriction that burdens

24  Airbnb's protected commercial speech as an online platform for rental

25  advertisements and listings provided by third parties.  The Ordinance seeks to

26  impose both criminal and civil penalties on Airbnb for completing "booking

27  transaction[s]" for short-term rentals that do not appear on the City's short-term

28

rental registry.  S.M. Mun. Code § 6.20.050(c).  This restriction targets conduct that is inextricably intertwined with protected commercial speech, and disproportionately burdens entities like Airbnb that are engaged in protected commercial speech.  The Ordinance constitutes a content-based restriction on speech because it applies based on the content of published rental listings on Airbnb's platform, and because the City necessarily must examine the content of these listings in order to enforce the law against Airbnb.

104.   The restriction and burden on speech imposed by the Ordinance is not narrowly or appropriately tailored to promote a compelling or substantial interest on the part of the City, and is not likely to achieve any such interest in a direct and material way.  In a manner substantively and procedurally compliant with the Coastal Act and federal law, the City could still enforce its short-term rental laws directly against non-compliant hosts.  The City has not shown, and cannot show, that this less-speech-restrictive alternative would not be an adequate means of achieving the City's policy goals.

105.   The enforcement of the Ordinance against Airbnb therefore violates the First Amendment of the United States Constitution, as applied to the City by the Fourteenth Amendment.

106.   Pursuant to 42 U.S.C. § 1983 and the Court's equitable powers, Airbnb seeks injunctive relief against the City, whose enforcement of the Ordinance would conflict with and violate the First Amendment.

## CLAIM 5:  VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS OF THE U.S. CONSTITUTION, AND CLAIM FOR INJUNCTIVE RELIEF, PURSUANT TO 42 U.S.C. § 1983 AND THE COURT'S EQUITABLE POWERS

### (Imposition of Criminal Penalties Without Scienter)

107.   Airbnb incorporates all of the preceding paragraphs as if fully set forth herein.

108.   The imposition of criminal penalties under the Ordinance violates the First Amendment and Due Process Clause of the Fourteenth Amendment of the United States Constitution because the Ordinance purports to impose strict criminal liability in connection with the publication or dissemination of information in the absence of proof of *mens rea* or scienter.

109.   The Ordinance seeks to impose criminal penalties on Hosting Platforms like Airbnb without requiring a showing that the platform knew the third-party listing at issue was not listed on the City's registry.  The Ordinance therefore would impose strict criminal liability on Airbnb in connection with any third-party listing that is not on the registry, even if Airbnb has no knowledge of that fact.

110.   Pursuant to 42 U.S.C. § 1983 and the Court's equitable powers, Airbnb seeks injunctive relief against the City, whose enforcement of the Act through criminal penalties would conflict with and violate the First Amendment and Due Process Clause of the Fourteenth Amendment.

**CLAIM 6:  VIOLATION OF THE STORED COMMUNICATIONS ACT, 18 U.S.C. §§ 2701 *ET SEQ.*, AND CLAIM FOR INJUNCTIVE RELIEF, PURSUANT TO 18 U.S.C. § 2707, 42 U.S.C. § 1983, AND THE COURT'S EQUITABLE POWERS**

111.   Airbnb incorporates all of the preceding paragraphs as if fully set forth herein.

112.   Under the SCA, "a provider of remote computing service or electronic communication service to the public shall not knowingly divulge a record or other information pertaining to a subscriber to or customer of such service . . . to any governmental entity," without a subpoena or other legal process, absent one of the other applicable exceptions, none of which apply here.  18 U.S.C. §§ 2702(a)(3), (c)(1); 2703(c).

113.   Airbnb is a provider of an "electronic communication service" within the meaning of the SCA, as it provides to its users "the ability to send or

receive wire or electronic communications." 18 U.S.C. § 2510(15). Airbnb also is a provider of a remote computing service within the meaning of the SCA, as it provides to users "computer storage or processing services by means of an electronic communications system." 18 U.S.C. § 2711(2).

114.    The City is a "governmental entity" under the SCA. *See* 18 U.S.C. § 2711(4) (defining "governmental entity" as "a department or agency of the United States or any State or political subdivision thereof").

115.    The Ordinance requires Hosting Platforms to "disclose to the City on a regular basis each home-sharing and vacation rental listing located in the City, the names of the persons responsible for each such listing, the address of each such listing, the length of stay for each such listing and the price paid for each stay." S.M. Mun. Code § 6.20.050(b). The City has established home-sharing rules that state such disclosures must occur on a quarterly basis.

116.    The enforcement of this provision violates and conflicts with the SCA, and Airbnb's rights thereunder, because it requires Airbnb to "divulge a record or other information pertaining to a subscriber to or customer of such service" to a "governmental entity," without a subpoena or other form of legal process. 18 U.S.C. §§ 2702(a)(3), (c)(1); 2703(c). Further, the requirement that Airbnb disclose the rental address, length of stay, and price paid violates the SCA because the City cannot compel this information without a court order requiring it to "offer[] specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d).

117.    This provision also interferes with or impedes the accomplishment of the full purposes and objectives of federal law, violates the Supremacy Clause, U.S. Const. art. VI, cl. 2, and is invalid and preempted.

118.   Pursuant to 18 U.S.C. § 2707(a)-(b), 42 U.S.C. § 1983, and this Court's equitable powers, Airbnb seeks injunctive relief against the City to prevent its enforcement of the Ordinance, which would conflict with and violate the SCA.

**CLAIM 7:  VIOLATION OF THE FOURTH AMENDMENT OF THE U.S. CONSTITUTION, AND CLAIM FOR INJUNCTIVE RELIEF, PURSUANT TO 42 U.S.C. § 1983 AND THE COURT'S EQUITABLE POWERS**

119.   Airbnb incorporates all of the preceding paragraphs as if fully set forth herein.

120.   The Ordinance requires Hosting Platforms to "disclose to the City on a regular basis each home-sharing and vacation rental listing located in the City, the names of the persons responsible for each such listing, the address of each such listing, the length of stay for each such listing and the price paid for each stay." S.M. Mun. Code § 6.20.050(b).

121.   The enforcement of this provision against Airbnb violates the Fourth Amendment of the Constitution, as applied to the City by the Fourteenth Amendment, because it constitutes an unreasonable search and/or seizure by compelling Airbnb to disclose to the City sensitive, private business records and/or other information in which Airbnb has a reasonable expectation of privacy, without prior judicial authorization or pre-compliance review, upon penalty of criminal sanction.

122.   Pursuant to 42 U.S.C. § 1983 and this Court's equitable powers, Airbnb seeks injunctive relief against the City to prevent enforcement of the Ordinance, which would violate the Fourth Amendment.

**CLAIM 8:  DECLARATORY RELIEF PURSUANT TO 28 U.S.C. § 2201**

123.   Airbnb incorporates all of the preceding paragraphs as if fully set forth herein.

124.  This action presents an actual controversy between Airbnb and the City concerning the validity of the Ordinance and its enforceability against Airbnb and other online Hosting Platforms.

125.  Based on the foregoing allegations, Airbnb is entitled to a declaration, pursuant to 28 U.S.C. § 2201, that the Ordinance cannot be enforced against Airbnb because such enforcement would violate the California Coastal Act, Cal. Pub. Res. Code §§ 30000 *et seq.*; the CDA, 47 U.S.C. § 230; the Supremacy Clause, U.S. Const. art. VI, cl. 2; the SCA, 18 U.S.C. §§ 2701 *et seq.*; and the First, Fourth, and Fourteenth Amendments of the United States Constitution.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Airbnb respectfully requests that the Court:

126.  Declare that the Ordinance violates the California Coastal Act because it conflicts with the text and policies of the Act, because it was never submitted to the Coastal Commission as an amendment to the City's Local Coastal Program or Land Use Plan, and because its passage and enforcement constitute development without a Coastal Development Permit.

127.  Declare that, as applied to Airbnb, the Ordinance violates 47 U.S.C. § 230 and the Supremacy Clause because it would permit the imposition of criminal and civil penalties on Airbnb for its publication-related activities and impose duties on Airbnb with respect to its protected editorial acts concerning third-party rental advertisements.

128.  Declare that, as applied to Airbnb, the Ordinance violates the First and Fourteenth Amendments of the U.S. Constitution because it would place content-based restrictions on speech by imposing criminal and civil penalties on Airbnb, and the restrictions the Ordinance would impose are not tailored to promote a compelling or substantial interest on the part of the City.

129.   Declare that, as applied to Airbnb, the Ordinance violates the First Amendment and Due Process Clause of the Fourteenth Amendment of the U.S. Constitution because it purports to impose strict criminal liability in the absence of proof of *mens rea* or scienter.

130.   Declare that, as applied to Airbnb, the Ordinance violates 18 U.S.C. §§ 2701 *et seq.* and the Supremacy Clause because it would compel Airbnb, an electronic communication service provider and remote computing service provider, to divulge information pertaining to a subscriber or to a customer of such service to the City, a governmental entity, without a subpoena or any other form of legal process.

131.   Declare that, as applied to Airbnb, the Ordinance violates the Fourth Amendment of the United States Constitution because the Ordinance compels Airbnb to disclose to the City sensitive, private business records in which Airbnb has a reasonable expectation of privacy, without prior judicial authorization or pre-compliance review, upon penalty of criminal sanction.

132.   Preliminarily and permanently enjoin the City; its officers, agents, servants, employees, and attorneys; and those persons in concert or participation with them from taking any actions to enforce Sections 6.20.020(a), 6.20.030, and 6.20.050(c) and (d) of the Santa Monica Municipal Code, as well as other portions of the Code providing for enforcement and penalties—including investigation, arrest, prosecution, or penalty—within the City's Coastal Zone, which "extend[s] inland generally 1,000 yards from the mean high tide line of the sea," Cal. Pub. Res. Code § 30103(a), unless and until the City obtains a Coastal Development Permit and/or submits a proposed amended Land Use Plan that is approved by the Coastal Commission.

133.   Preliminarily and permanently enjoin the City; its officers, agents, servants, employees, and attorneys; and those persons in concert or

FIRST AMENDED COMPLAINT OF AIRBNB, INC.

participation with them from taking any actions to enforce Sections 6.20.050(b), (c), and (d), and 6.20.100 of the Santa Monica Municipal Code, as well as the other portions of the Code providing for enforcement and penalties that would penalize Airbnb—including any investigation, arrest, prosecution, or penalty—for: (a) the completion of booking transactions for rental advertisements published by third party hosts or the publication of other information provided by third-party hosts on Airbnb's platform; (b) the failure to disclose to the City each rental listing located in the City as well as the names of the persons responsible for the listings, the addresses of the listings, and length of stay and price information associated with the listings; or (c) the failure to monitor and/or verify whether a rental listing advertises a property on the City's registry.

134.   Order the City to pay a fine of between $1,000 and $15,000 per day for knowing and intentional violations of the Coastal Act to the California Coastal Conservancy's "Violation Remediation Account."

135.   Award Airbnb its reasonable costs and attorneys' fees pursuant to 42 U.S.C. § 1988; and

136.   Award Airbnb such other and further relief as the Court deems just and proper.

FIRST AMENDED COMPLAINT OF AIRBNB, INC.

1 | DATED:  December 13, 2017          MUNGER, TOLLES & OLSON LLP

2

3

4

5                                              By:   */s/ Jonathan H. Blavin*
                                                      JONATHAN H. BLAVIN
6

7                                              COTCHETT, PITRE & McCARTHY, LLP

8

9

10

11                                             By:   */s/ Joseph W. Cotchett*
                                                      JOSEPH W. COTCHETT
12

13                                             Attorneys for Plaintiff Airbnb, Inc.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED COMPLAINT OF AIRBNB, INC.

## **FILER'S ATTESTATION**

Pursuant to L.R. 5-4.3.4(a)(2), I, Jonathan H. Blavin, certify that that all other signatories listed, and on whose behalf the filing is submitted, concur in this filing's content and have authorized this filing.

By: */s/ Jonathan H. Blavin*
JONATHAN H. BLAVIN
Attorneys for Plaintiff Airbnb, Inc.

35