O
JS-6

# United States District Court
# Central District of California

| | |
|---|---|
| HOMEAWAY.COM, INC. <br><br> Plaintiff, <br><br> v. <br><br> CITY OF SANTA MONICA, <br><br> Defendant. | Case Nos. 2:16-cv-06641-ODW (AFM) <br> 2:16-cv-06645-ODW (AFM) |
| AIRBNB, INC., <br><br> Plaintiff, <br><br> v. <br><br> CITY OF SANTA MONICA, <br><br> Defendant. | **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS [75]** |

## I. INTRODUCTION

Plaintiffs Airbnb, Inc. and Homeaway.com, Inc. (collectively "Plaintiffs") challenge the City of Santa Monica's (the "City") Ordinance Number 2535 prohibiting short-term housing rentals (the "Ordinance"). The City moves to dismiss Plaintiffs' federal-law claims and requests that the Court decline supplemental jurisdiction over the remaining state-law claim. For the following reasons, the Court **GRANTS** the

City's Motion.[1] (Mot., ECF No. 75.)

## II. BACKGROUND

Plaintiffs operate websites that allow individuals seeking, and persons listing, accommodations ("*guests*" and "*hosts*," respectively) to find each other and enter into agreements to reserve and book accommodations. (Airbnb First Am. Compl. ("ABB FAC") ¶¶ 27–28, Case No. 2:16-cv-6645 ECF No. 49; HomeAway First Am. Compl. ("HA FAC") ¶¶ 18–20, Case No. 2:16-cv-6641 ECF No. 55.)[2] Hosts provide the content of their listings, such as description, price, and availability, (ABB FAC ¶¶ 31–32; HA FAC ¶ 19) and "are responsible for their Listings," (ABB FAC ¶ 9; *see* HA FAC ¶ 23). Plaintiffs do not generally review listings before they are posted, so listings appear on their websites almost immediately after hosts post them. (ABB FAC ¶ 32; HA FAC ¶ 19.)

Airbnb and HomeAway operate with different business models. Airbnb provides payment processing services that permit hosts to receive payments electronically. (ABB FAC ¶ 28.) Airbnb receives a fee from the guest and host, which covers its listing services, calculated as a percentage of the booking fee. (*Id.* ¶ 29.) HomeAway hosts pay for services in one of two ways: a pay-per-booking option based on a percentage of the amount charged by the host, or buying a subscription to advertise properties for a set period. (HA FAC ¶ 21.) Travelers using HomeAway pay hosts directly or through third-party payment processors. (*Id.* ¶ 20.)

In May 2015, the City adopted Ordinance 2484CCS (the "Original Ordinance"), adding Chapter 6.20 to the Municipal Code. (ABB FAC ¶ 43; HA FAC ¶ 24.) The Original Ordinance prohibited "Vacation Rentals," which were defined as rentals of residential property for thirty consecutive days or less, where residents do not remain within their units to host guests. Santa Monica Municipal Code ("SMMC")

---

[1] After carefully considering the papers filed in support of and in opposition to the Motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

[2] Unless specifically noted otherwise, citations to the docket are from the lead case No. 2:16-cv-6641.

2

§§ 6.20.010(a), 6.20.020(a). The Original Ordinance permitted residents to host visitors for compensation for a period of less than thirty-one days, so long as residents obtained a business license and remained on-site throughout the visitor's stay. SMMC § 6.20.010(a). The City claims that the Original Ordinance expressly adopted and reaffirmed the City's longstanding prohibition on short-term rentals.[3] (Mot. 4.) Plaintiffs argue that that the Original Ordinance marked a change in the law, because before it was passed, the City never directly banned short-term rentals. (*See* Opp'n 3, ECF No. 80.)

The Original Ordinance also regulated "Hosting Platforms" like Plaintiffs, by barring them from "advertis[ing]" or "facilitat[ing]" rentals that violated the City's short-term rental laws. SMMC § 6.20.030. It also required them to (1) collect and remit to the City applicable Transient Occupancy Tax revenue and (2) disclose certain information about listings to the City, including the names of the persons responsible for each listing, the address, the length of stay, and the price paid for each stay. SMMC §§ 6.20.030, 6.20.050. The City issued Plaintiffs several citations pursuant to the Original Ordinance, which Plaintiffs paid under protest. (ABB FAC ¶ 50; HA FAC ¶ 27.)

When the City increased its enforcement efforts, Plaintiffs filed the instant case on September 2, 2016. (*See* Compl., ECF No. 1.) On September 21, 2016, the parties stipulated to stay the case to allow the City to prepare and consider amendments to the Original Ordinance to address the legal challenges Plaintiffs raised. (ECF No. 20.)

On January 24, 2017, the City adopted the Ordinance, which amended the Original Ordinance. The Ordinance does not prohibit the publication, or require the removal of, content provided to Plaintiffs by hosts, nor does it require Plaintiffs to verify content provided by hosts to ensure that short-term rental hosts comply with the

---

[3] According to the City, the City's Zoning Ordinance identifies the uses that are specifically permitted in each district. (Mot. 4.) Under this permissive zoning scheme, if a use is not listed, it is prohibited. (*Id.*) The City claims that the legislative record shows that vacation rentals have not been a permitted use in any residential zoning district since at least 1988. (*Id.*)

law. *See* SMMC § 6.20.050(c). Rather, the Ordinance prohibits Hosting Platforms from "complet[ing] any booking transaction for any residential property or unit unless it is listed on the City's registry [of licensed home-sharing hosts] at the time the hosting platform receives a fee for the booking transaction." *Id.* A "booking transaction" is "[a]ny reservation or payment service provided by a person who facilitates a home-sharing or vacation rental transaction between a prospective transient user and a host." *Id.* § 6.20.010(d). Further, the Ordinance permits the City to "issue and serve administrative subpoenas as necessary to obtain specific information regarding home-sharing and vacation rental listings located in the City, including but not limited to" the information in Section 6.20.050(b). *Id.* § 6.20.100(e). Each violation of the Ordinance is an infraction, punishable by a fine of up to $250, or a misdemeanor, punishable by a fine up to $500, imprisonment of up to six months, or both. *Id.* § 6.20.100(a). The Ordinance provides that the duties imposed on hosting platforms "will not apply if determined by the City to be in violation of, or preempted by" state or federal laws. *Id.* § 6.20.050(f).

On December 13, 2017, Plaintiffs filed a First Amended Complaint, alleging that the Ordinance violates the Communications Decency Act ("CDA"), 47 U.S.C. § 230, the First, Fourth, and Fourteenth Amendments of the U.S. Constitution, the Stored Communications Act, 18 U.S.C.§ 2701 *et seq.*, and the California Coastal Act, Cal. Pub. Res. Code § 30500 *et seq.* The City moved to dismiss on February 15, 2018.

### III. LEGAL STANDARD

A complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The determination whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as

true and . . . in the light most favorable" to the plaintiff. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). But a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). The court must dismiss a complaint that does not assert a cognizable legal theory or fails to plead sufficient facts to support an otherwise cognizable legal theory. Fed. R. Civ. P. 12(b)(6); *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

## IV. REQUESTS FOR JUDICIAL NOTICE

The Court first addresses the City's pending requests for judicial notice. (Req. Judicial Notice, ECF No. 76.) While a district court generally may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion, a court may consider any documents referenced in the complaint, and may take judicial notice of matters in the public record, without converting a motion to dismiss into one for summary judgment. *See Lee*, 250 F.3d at 688–89. However, the Court can only take judicial notice of the existence of these documents, not the truth of the matters contained therein. *See id.* at 690 (explaining that when taking the judicial notice of public documents, the district court should do so "not for the truth of the facts recited therein," but for the existence of the document).

The City requests the Court to take judicial notice of the following:

> <u>Exhibit Q</u>: The Ellis Act and its Effects on Rent-Stabilized Housing in Santa Monica, a Study of Factors Leading to Withdrawal and Possible Mitigation Strategies, Presented to the Santa Monica Rent Control Board as Item 12a at the November 9, 2017 Regular Meeting of the Santa Monica Rent Control Board;
>
> <u>Exhibit R</u>: Information Item – Short-Term Rental Program Update, from David Martin, Director of Planning and Community Development for the Mayor and City Council,

| | |
|---|---|
| 1 | prepared by the Office of the City Manager, dated February 9, |
| 2 | 2018; |
| 3 | <u>Exhibit S</u>: California's Housing Future: Challenges and |
| 4 | Opportunities, Public Draft – Statewide Housing Assessment |
| 5 | 2025, prepared by the State of California, California Business, |
| 6 | Consumer Services and Housing Agency, California |
| 7 | Department of Housing and Community Development. |

The City claims that these exhibits are public documents, maintained as part of the City's files regarding short-term rentals and their effect on the City's housing. (Req. Judicial Notice 3.) Plaintiffs do not oppose the City's Requests. Therefore, the Court takes judicial notice of Exhibits Q–S as to their existence in the City's files regarding short-term rentals, but not for the truth of the matters asserted therein.

## V. ANALYSIS

The City argues that Plaintiffs cannot prevail on their federal claims and the Court should decline to exercise jurisdiction over the remaining state-law claims. The Court addresses each claim in turn.

### A. Communications Decency Act

Plaintiffs allege that the Ordinance violates the CDA, 47 U.S.C. § 230, because the Ordinance treats Plaintiffs as the publisher or speaker of information provided by the hosts, who are third-party content providers. (HA FAC ¶ 41; ABB FAC ¶ 93.)

Under the CDA, "no provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). Plaintiffs argue that, by requiring them to verify whether a listing is included on the City's registry before completing a booking transaction, the Ordinance imposes liability on them based on content supplied by third parties. (Opp'n 14–15.) The City argues that Plaintiffs' CDA claims must be dismissed because the Ordinance targets unlawful conduct that is unrelated to publishing activities. (Mot. 11.)

The parties fully addressed these arguments previously in response to Plaintiffs' Motion for Preliminary Injunction. In the Court's Order denying the preliminary injunction, the Court agreed with the City, finding that the Ordinance does not penalize Plaintiffs' publishing activities; rather, it seeks to keep them from facilitating business transactions on their sites that violate the law. (ECF No. 81.) In reaching this decision, the Court followed a decision in a similar case from the Northern District of California in *Airbnb, Inc. v. City and County of San Francisco*, 217 F. Supp. 3d 1066, 1072 (N.D. Cal. 2016) (the "San Francisco Decision").

The Court finds no reason to alter its previous reasoning on Plaintiffs' CDA claim. As a new argument, however, Plaintiffs point out the different standard of proof for establishing entitlement to a preliminary injunction as compared to opposing a motion to dismiss. They argue that for the purposes of the Motion to Dismiss the Court must accept as true their allegations that the Ordinance will require them to "monitor and screen listings prior to publication" to "avoid the risk of significant criminal and civil penalties." (Opp'n 15 (citing ABB FAC ¶¶ 75, 95 and HA FAC ¶¶ 9, 37).) According to Plaintiffs, monitoring and screening are "core publisher functions, which Section 230 immunizes from regulation." (Opp'n 15.) Plaintiffs ask the Court to ignore the San Francisco Decision and instead rely on *Doe v. Internet Brands, Inc.*, 824 F.3d 846 (9th Cir. 2016), *Barnes v. Yahoo! Inc.*, 570 F.3d 1096 (9th Cir. 2009), and *Green v. Am. Online*, 318 F.3d 465, 471 (3d Cir. 2003).

The cases Plaintiffs urges the Court to follow, however, were not answering the same question as the one presented here and are distinguishable. In *Internet Brands*, a Jane Doe plaintiff brought a claim for negligent failure to warn against the operator and owner of a networking website. In adjudicating the defendant's motion to dismiss, the court found that the plaintiff's claim was not barred by the CDA because it was unrelated to the defendant's publishing activities; rather, she claimed that the defendant should have warned her about information it obtained from an outside source about "how third parties targeted and lured victims through" the website.

*Internet Brands*, 824 F.3d at 851. The *Internet Brands* court found that the plaintiff's negligent-failure-to-warn claim survived because it did "not seek to hold [the defendant] liable as the publisher or speaker of any information provided by another information content provider." *Id.* (internal quotation and citation omitted). While the court noted that the plaintiff's claim "has nothing to do with [the defendant's] efforts, or lack thereof, to edit, monitor, or remove user generated content," it did not hold that "monitoring" alone, without further editing or decision-making regarding posting or removal of content, was a protected publishing activity. *See id.* at 852.

In *Barnes*, the issue presented was whether the CDA protects an internet service provider from suit where it undertook to remove from its website material harmful to the plaintiff but failed to do so. 570 F.3d at 1098. The plaintiff's ex-boyfriend created fake profiles for her, which contained nude photographs, on a website run by the defendant. The plaintiff demanded the defendant take down the fake profiles. The defendant told her that they would take steps to remove the content, but they never did. The court affirmed the district court's dismissal of the plaintiff's negligent-provision-of-services claim, but allowed her promissory estoppel claim to proceed. The difference, the court explained, was the first claim sought liability based on "the defendant's status or conduct as a publisher or speaker" and the latter claim, based on quasi-contract principles, did not. *See id.* at 1107.

The *Barnes* court's description of what constitutes a publisher is helpful. The court provided that "publication involves reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content." *Id.* at 1101. For this proposition, the court cited *Fair Housing Council of San Francisco Valley v. Roommates.com, LLC*, which held that "any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230." *Id.* at 1102 (citing 521 F.3d 1157, 1170–71 (9th Cir. 2008)). The *Barnes* court ultimately concluded that "a publisher reviews material submitted for publication, perhaps edits it for style or technical fluency, and then

decides whether to publish it." *Barnes*, 570 F.3d at 1102. Here, Plaintiffs are not being punished for their editorial decisions, such as which listings are published or how properties are advertised. The Ordinance only prohibits the illegal transactions.

In *Green*, the plaintiff sought damages against America Online ("AOL") for refusing to take action against John Does 1 and 2, who allegedly transmitted harmful online messages to the plaintiff and others. 318 F.3d 464, 468 (3d Cir. 2003). The Third Circuit affirmed the district court's dismissal of the claims, because the liability the plaintiff sought to impose would treat AOL as the publisher or speaker of the harmful content. *Id.* at 470. The court found that section 230 "bars lawsuits seeking to hold a service provide liable for its exercise of traditional editorial functions – such as deciding whether to publish, withdraw, postpone, or alter content." *Id.* at 471 (quoting *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997)). Similar to the situation in *Barnes*, the *Green* plaintiff sought damages for the defendant's failure to remove harmful content. This is a different scenario then the one at issue here, where the Ordinance does not require Plaintiffs to remove any particular listing or content.

Plaintiffs argue the Ordinance requires them to "monitor and screen" listings, which they argue are "publishing" activities, and thus, the Ordinance runs afoul of the CDA. Ultimately, the Court disagrees that the conduct regulated by the Ordinance is a publishing activity and finds that neither *Barnes*, *Internet Brands*, nor *Green* dictate a different result. The Ordinance prevents Plaintiffs from facilitating booking transactions for illegal rentals. It does not require Plaintiffs to edit or exclude any content on their websites. In the San Francisco Decision, the court distinguished between a hypothetical unlawful regulation that "regulate[s] what can or cannot be said or posted in the listings" and a permissible regulation that "held plaintiffs liable for their own conduct, namely for providing, and collecting a fee for, Booking Services in connection with an unregistered unit." 217 F. Supp. 3d at 1073. The Court agrees with this reasoning and finds that the Ordinance does not impose liability

on Plaintiffs' for publishing activities. Therefore, the Court **DISMISSES** Plaintiffs' CDA claim—Airbnb's Claim No. 3 and HomeAway's Claim No. 1—with prejudice.

**B.     First Amendment**

Plaintiffs allege that the Ordinance is a content-based restriction that burdens and impermissibly chills their protected commercial speech and, therefore, violates the First Amendment. (ABB FAC ¶ 103; HA ¶ 45.) Plaintiffs incorporate their arguments in support of their Motion for Preliminary Injunction in their Opposition. (Opp'n 18.) In the Order denying Plaintiffs' Motion for Preliminary Injunction, the Court found that the Ordinance regulates conduct, not speech, and that the conduct banned by the Ordinance—booking transactions for residential properties not listed on the City's registry—does not have such a "significant expressive element" as to draw First Amendment protection. The Court sees no reason to revisit the reasoning set out in its previous order, which addressed the arguments presented in relation to the Motion for Preliminary Injunction. Instead, the Court addresses only the new arguments Plaintiffs raise in their Opposition to the City's Motion to Dismiss.

Plaintiffs focus on three additional cases cited by the City: *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*, 447 U.S. 557, 564 (1980); *United States v. Williams*, 553 U.S. 285, 297–98 (2008); and *Valle Del Sol Inc. v. Whiting*, 709 F.3d 808, 822 (9th Cir. 2013). (Opp'n 18–20.)

The City cites *Central Hudson* for the proposition that even if the Ordinance were construed to restrict commercial speech, it would survive the intermediate scrutiny called for in that case. (Mot. 16.) Plaintiffs argue that *Central Hudson* confirms that the First Amendment protects commercial speech. (Opp'n 19.) In *Central Hudson*, the Supreme Court applied intermediate scrutiny to overturn a regulation from the Public Service Commission of the State of New York that banned utility companies from advertising electricity services. 447 U.S. at 558–59. However, the Court need not decide whether the Ordinance survives intermediate scrutiny, because the Court concludes that the Ordinance does not regulate speech. The

Ordinance imposes no liability on Plaintiffs for the content of materials on their websites. The Ordinance is quite different from the regulation at issue in *Central Hudson*, which was a direct ban on a particular form of speech.

The City cites *Williams* and *Valle Del Sol* for its contention that the First Amendment does not protect offers to engage in unlawful conduct. (Mot. 16.) Plaintiffs reply that where, as here, a listing is not unlawful "on its face," First Amendment protection applies. (Opp'n 19 (citing *Braun v. Soldier of Fortune Magazine, Inc.*, 968 F.2d 1110, 1117–19 (11th Cir. 1992)).) The Court agrees with the City that the First Amendment does not protect speech proposing an illegal transaction. *See, e.g.*, *Pittsburgh Press Co. v Pittsburgh Comm'n on Human Relations*, 413 U.S. 376, 388–89 (1973) ("Any First Amendment interest which might be served by advertising an ordinary commercial proposal and which might arguably outweigh the governmental interest supporting the regulation is altogether absent when the commercial activity itself is illegal and the restriction on advertising is incidental to a valid limitation on economic activity."). There can be no dispute that it is illegal in Santa Monica to rent a unit that does not comply with the Ordinance. Therefore, Plaintiffs cannot use the First Amendment as a shield to allow them to communicate offers to rent illegal units. *See Airbnb*, 217 F. Supp. 3d at 1079.

*Braun* does not require a different result. The City points out that the *Braun* court did not hold that the First Amendment protected advertisement of illegal conduct unless the illegality appeared "on its face." (Reply 10, ECF No. 82.) The Court agrees. In *Braun*, the court simply found that under the Georgia negligence standard it may be appropriate to impose tort liability on a publisher when an advertisement "on its face" clearly made it apparent that there was a substantial risk of harm to the public. 968 F.2d at 1118. The court also recognized that "[i]t is well-settled that the First Amendment does not protect commercial speech 'related to illegal activity' and, thus, there is no constitutional interest in publishing . . . ads that solicit criminal activity." *Id.* at 1117 (citing *Central Hudson*, 447 U.S. at 564, and *Pittsburgh Press*,

413 U.S. at 388).

For these reasons, the Court **DISMISSES** Plaintiffs' First Amendment Claim—Airbnb's Claim No. 4 and HomeAway's Claim No. 2—with prejudice.

**C.     Fourteenth Amendment**

Plaintiffs allege that the Ordinance violates the Fourteenth Amendment because it imposes strict criminal liability without proof of mens rea or scienter. (ABB FAC ¶ 108, HA FAC ¶ 46.) The City now claims that it "will accept the imputation of a requirement for scienter" and "nothing in the . . . Ordinance's legislative record suggests that the City Council intended to dispense with mens rea as an element." (Mot. 17.) The City also argues that the absence of a specified mens rea does not invalidate a criminal statute; instead, scienter is an implied element for proving criminal liability. (*Id.* (citing *Staples v. United States*, 511 U.S. 600, 605–06 (1994)).) The Court agrees. In *Staples*, the Supreme Court explained that a mens rea element can be implied and that in interpreting federal statutes, "some indication of congressional intent, express or implied, is required to dispense with mens rea as an element of a crime." 511 U.S. 600, 606 (1994). California courts have taken a similar approach and have read scienter into statutes with civil penalties. *See, e.g.*, *People v. Simon*, 9 Cal. 4th 493, 522 (1995); *Stark v. Superior Court*, 52 Cal. 4th 368, 393 (2011) ("In recent jurisprudence, we have construed criminal statutes to include a guilty knowledge requirement even though the statutes did not expressly articulate such a requirement"); *People v. Salas*, 37 Cal. 4th 967, 978 (2006). Therefore, the Court construes the Ordinance as requiring scienter. *See Airbnb*, 217 F. Supp. 3d at 1080. The Court **DISMISSES** Plaintiffs' Fourteenth Amendment Claim—Airbnb's Claim No. 5 and HomeAway's Claim No. 2—with prejudice.

**D.     Stored Communications Act and Fourth Amendment**

Plaintiffs allege that the Ordinance's requirement that they regularly disclose private user information to the City, without any subpoena or other form of legal

process, violates the Stored Communications Act ("SCA") and the Fourth Amendment. (HA FAC ¶¶ 47–52; ABB FAC ¶¶ 111–22.)

The Ordinance provides that, "[s]ubject to applicable laws, hosting platforms shall disclose to the City on a regular basis each home-sharing and vacation rental located in the City, the names of the persons responsible for each such listing, the address of each such listing, the length of stay for each such listing and the price paid for each stay." SMMC § 6.20.050(b). The City argues that the "applicable laws" provision means that the Ordinance must comply with the SCA, the Fourth Amendment, and SMMC § 6.20.100(e), which outlines an administrative subpoena process for the City to obtain the information described above. Section 6.20.100(e) provides:

> The City may issue and serve administrative subpoenas as necessary to obtain specific information regarding home-sharing and vacation rental listings located in the City, including, but not limited to, the names of the persons responsible for each such listing, the address of each such listing, the length of stay for each such listing and the price paid for each stay, to determine whether the home-sharing and vacation rental listings comply with this Chapter. Any subpoena issued pursuant to this section shall not require the production of information sooner than thirty days from the date of service. A person that has been served with an administrative subpoena may seek judicial review during that thirty-day period.

The City also points to § 6.20.050(f), which requires that "[t]he provisions of this Section shall be interpreted in accordance with otherwise applicable State and Federal law(s) . . ."

The SCA "protects users whose electronic communications are in electronic storage with an [internet service provider] or other electronic communications facility." *Theofel v. Farley-Jones*, 359 F.3d 1066, 1072–73 (9th Cir. 2004). The SCA allows for a governmental entity to require an internet service provider to disclose

contents of the communications protected by the Act, if the governmental entity obtains a warrant, an administrative subpoena, or a court order. 18 U.S.C. § 2703(b).

Additionally, the Fourth Amendment requires that the subject of an administrative search must be afforded an opportunity to obtain pre-compliance review before a neutral decision-maker. *City of Los Angeles v. Patel*, 135 S. Ct. 2443, 2452 (2015). Plaintiffs assert a facial and an as-applied challenge to the Ordinance. A facial challenge is an attack on a statute or regulation itself as opposed to a particular application. *Id.* at 2449. In analyzing such a challenge, the Court analyzes the statute or regulation at issue and considers whether applications of that law, permitted on its face, violate the Constitution. *See id.* at 2451.

Plaintiffs primarily rely on *Patel* to support their Fourth Amendment claim. In that case, the Supreme Court found that a Los Angeles regulation requiring hotel owners to divulge registration information to police officers on demand to be facially invalid under the Fourth Amendment. *Id.* at 2453. The court noted that the City of Los Angeles did "not even attempt to argue that [the regulation] affords hotel operators any opportunity [for pre-compliance review] whatsoever." *Id.* Here, on the contrary, the City argues that the Ordinance expressly permits Hosting Platforms a period of time to review the administrative subpoena requesting the information and seek judicial review under § 6.20.100(e). (Mot. 23.) Plaintiffs respond that they are not challenging § 6.20.100(e), but § 6.20.050(b), which does not mention administrative subpoenas or judicial review. The latter section, however, includes a qualifier that it is "subject to applicable laws," which the Court interprets to include the subpoena and review provisions in § 6.20.100(e), the SCA, and the Fourth Amendment. Therefore, the Court finds that the Ordinance does not violate the SCA or the Fourth Amendment on its face.

The Court also finds that Plaintiffs have not adequately pleaded an as-applied challenge to the Ordinance. Plaintiffs make no allegation that the City has attempted to enforce § 6.20.050(b) at all, with or without the use of an administrative subpoena.

Therefore, Plaintiffs have not alleged that the disclosure provision in the Ordinance has been applied to them. *See Foti v. City of Menlo Park*, 146 F.3d 629, 635 (9th Cir. 1998) ("An as-applied challenge contends that the law is unconstitutional as applied to the [plaintiff's] particular . . . activity, even though the law may be capable of valid application to others."). The Court finds that Plaintiffs have failed to state a claim for violation of the SCA and/or the Fourth Amendment—Airbnb's Claims Nos. 6 and 7 and HomeAway's Claims Nos. 3 and 4—and **DISMISSES** those claims with prejudice.

### E. California Coastal Act

Because the Court has dismissed all of Plaintiffs' pending federal claims, the Court declines to exercise supplemental jurisdiction over the remaining state-law claims under the California Coastal Act. *See* 28 U.S.C. § 1367(c)(3); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring them for a surer-footed reading of applicable law. Certainly, if the federal law claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.") Therefore, the Court dismisses Plaintiffs' California Coastal Act Claims—Airbnb's Claims Nos. 1 and 2 and HomeAway's Claims No. 5—without prejudice.

### F. Declaratory Relief

As discussed above, the Court finds that Plaintiffs have failed to state a claim for their federal causes of action and declines to exercise jurisdiction over their state-law claims. Therefore, Plaintiffs cannot sustain an action for declaratory relief.

///
///
///
///
///

## VI. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the City's Motion to Dismiss. (ECF No. 75.) The Court **DISMISSES** Plaintiffs' California Coastal Act Claim **WITHOUT PREJUDICE** and **DISMISSES WITH PREJUDICE** all other claims. The Clerk of the Court shall close the case.

**IT IS SO ORDERED.**

June 14, 2018

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**